732 P.2d 203
**Robert K. MITCHELL,
Petitioner/Appellant/Appellee/
Cross-Appellee,**

v.

**Carole Anne MITCHELL,
Respondent/Appellee/Appellant/
Cross-Appellant.**

**No. 2 CA–CIV 5483.**

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 30, 1985.

Andrews, Marenda & Moseley, P.A. by M.B. Moseley and John S. Schaper, Phoenix, for petitioner/appellant/appellee/cross-appellee.

Lewis and Roca by Jeremy E. Butler and Paul G. Ulrich, Phoenix, for respondent/appellee/appellant/cross-appellant.

## OPINION

LACAGNINA, Judge.

Robert K. Mitchell (husband) appeals from three provisions of an August 24, 1983 judgment and decree of dissolution of marriage as amended and from a post-judgment order of March 13, 1984, modifying provisions of the decree of dissolution of marriage as amended. He claims any goodwill of his partnership had no value and could not be apportioned as a community asset; that the community interest in his life insurance policies was limited to their cash value, and the court could not change the ownership of his life insurance policies

and award them to his wife; that there was no evidence to support the value established by the court for the Pinetop property; and that the court could not modify provisions of the judgment and decree of dissolution as amended after he and his wife had appeals pending. We agree and reverse, except for the interest in his life insurance policy.

Carol Ann Mitchell (wife) appeals from the provisions of the August 24, 1983 judgment and decree of dissolution of marriage as amended, awarding her spousal maintenance and an "equalizing" payment required by an unequal division of the community assets. We need not decide her claims on appeal because our opinion resolving the issues raised by husband's appeal will require remand for further proceedings consistent with our opinion and require the trial court to alter and modify the provisions of the original judgment and decree of dissolution of marriage as amended.

The necessary facts supporting our opinion will be stated during the following discussion of the issues.

## I

## PROFESSIONAL PARTNERSHIP HAD NO GOODWILL SUBJECT TO DIVISION AS A COMMUNITY ASSET

A. *The agreement gave no monetary interest in goodwill of partnership.*

■ Husband is one of the partners of a public accounting firm. The interest of the community upon dissolution is to be determined by the provisions of the partnership agreement and the Arizona statutes governing partnerships. During their marriage, husband and wife executed partnership agreements in 1975, 1978, and 1979. Each agreement provided:

> 17. GOODWILL. The parties to this partnership agreement specifically intend that no value be placed upon any Goodwill of the firm that may exist, and there-

fore, specify that no valuation shall be attempted in the eventual determination of a partner's interest in the net assets of the partnership, its capital or for any other purpose.

■ According to the provisions of the valid partnership agreement, husband had no right to receive anything of value for goodwill upon dissolution, retirement or death. Since the community had no monetary interest in the goodwill of the partnership, the court could not value and award a nonexisting asset upon dissolution of the marriage. The trial court valued the community interest in the partnership at $150,000. This value included an amount beyond the value of the capital assets of the partnership which could only be supported by evidence received by the court from expert witnesses placing a value upon the goodwill of the professional partnership. We reverse and remand for a·determination by the trial court of the community interest in the partnership without placing a value on goodwill.

B. *Arizona law does not support the concept of goodwill or increased earning capacity as a divisible community asset.*

■ Wife urges us to extend to professional partnerships the rule stated in *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (App.1981), for placing a value on the goodwill of a shareholder of a professional corporation. We decline to extend that rule beyond its facts. The court in *Wisner* supported its opinion with the general laws governing professional corporations, A.R.S. §§ 10–908(3)(a), 10–908(6), and 10–909(D), and the transferability and sale of shares of a professional corporation during and after the death of a shareholder and for its indefinite continuation after a shareholder's death. There is no similarity between the laws governing the interests of a shareholder in a professional corporation and the laws governing the interests of a partner under the Uniform Partnership Act.[1]

---

1. As an example, a partner's interest does not pass to the heirs or widow of a partner; a

partner's interest in partnership property is exempt from execution and attachment except by

Wife argues that she should not be bound by the terms of the partnership agreement she signed during her marriage because they would then become invalid, post-nuptial agreements. We reject the argument, but even if, arguendo, we could relieve her from the terms of the partnership agreement (placing no value on goodwill), we still would reverse the trial court because goodwill of a professional proprietorship or partnership is not a divisible community asset. *Austin v. Austin,* 619 S.W.2d 290 (Tex.Civ.App.1981); *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (App.1981); 52 A.L.R.3d 1338.

An analysis of goodwill as an asset leads us to the conclusion that as applied to professions, its value is in reality both the ability to earn and the increased earnings from the practice of the particular profession because of an enhanced reputation. *Jacob v. Miner,* 67 Ariz. 109, 191 P.2d 734 (1948); *Spheeris v. Spheeris,* 37 Wis.2d 497, 155 N.W.2d 130 (1967); and *Holbrook v. Holbrook, supra.*

In *Holbrook* the court said:

> The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

We think this case is analogous to the situation in *DeWitt v. DeWitt* [98 Wis.2d 44, 296 N.W.2d 761] in which this court determined that a professional education or the increased earning capacity that it confers upon the spouse who holds it is not a divisible marital asset, even though the acquisition of the degree is partly attributable to the earnings and efforts of the other spouse. * * *

It was further explained in *DeWitt* that valuing a professional degree as a marital asset necessarily requires division of the post-divorce earnings of the degree-holding spouse, which is inconsistent with the requirement that only assets acquired during marriage can be divided.

Like an educational degree, a partner's theoretical share of a law firm's goodwill cannot be exchanged on an open market: it cannot be assigned, sold, transferred, conveyed or pledged. Although we recognize the factual distinction between a degree-holder and a partner or shareholder in a law firm, we think the similarities compel analogous treatment in a divorce setting. In both cases, the "asset" involved is not salable and has computable value to the individual only to the extent that it promises increased future earnings.

103 Wis.2d 327, 309 N.W.2d at 354–355 (footnotes omitted).

The analogy between an educational degree and partnership goodwill described is consistent with the view adopted by Arizona courts, that one spouse's education, professional degree and license, or the increased earning potential each represents, cannot be characterized as community property subject to valuation and division upon dissolution. *Pyeatte v. Pyeatte,* 135 Ariz. 346, 661 P.2d 196 (App.1983); *Wisner v. Wisner, supra.*

C. *Expert's valuation based on future earnings erroneous.*

Since goodwill of a professional partnership is in reality the ability to increase future earnings based on an enhanced reputation, the trial court could not,

---

partnership creditors, A.R.S. § 29–225(B)(3), and the partnership's dissolution is caused by

the death of a partner. A.R.S. § 29–231(D).

under existing Arizona law, accept and rely upon the testimony of the expert witness using a method of valuation for the partnership goodwill based on husband's future earnings for five years. To reach a theoretical value for the goodwill of the partnership, the expert witness contemplated a forced sale of the husband's portion of the accounting partnership in an amount to be based on and to be paid from future earnings, an agreement by the husband to remain employed for the transition period to effect a transfer of the partnership's existing clients to the purchasers and an agreement by husband not to practice as an accountant in Arizona in competition with the purchaser for a period of five years. This method would have involved not a determination of community interest, but a division of husband's individual earning capacity. That violates the provisions of A.R.S. § 25–211 which states that post-marital earnings are not community assets and must belong to the spouse who produces them. *Warren v. Warren,* 2 Ariz. App. 206, 407 P.2d 395 (1965); *Garrett v. Garrett,* 140 Ariz. 564, 683 P.2d 1166 (App. 1984).

■ Future earnings and/or earning capacity is not an asset to be valued and divided as community property but is an element that can be considered by the trial court only when it determines, along with need, the issue of spousal maintenance and child support. We reverse, therefore, because the court, from the evidence presented, disregarded the partnership agreement, created a nonexisting community asset and valued it using a formula partly based on husband's future earnings.

## II

### PINETOP PROPERTY IMPROPERLY VALUED

■ The court valued the Pinetop property at $79,000. There is no evidence in the record to support this value. The evidence at best supports a value of $70,595 for the community equity in the property, and this value shall be used by the trial court on remand when determining an equitable division of the community assets.

Husband argues that in valuing the Pinetop property, the court should consider the tax consequences to be incurred upon sale of the property, and reduce the equity by that amount. We disagree and hold that the potential tax consequences which may result from a sale of the property should not be considered by the court when valuing the community equity in the property.

## III

### COMMUNITY INTEREST IN LIFE INSURANCE POLICIES LIMITED TO CASH VALUE

■ The trial court awarded wife the ownership of life insurance policies covering husband's life. Husband contends this was impermissible. The trial court has the authority to assign, encumber or restrict the ownership of a life insurance policy in order to secure the performance of other provisions of the decree. Although the trial court did not specifically state the reason for transferring ownership, we must presume a proper reason, and since husband was ordered to pay spousal maintenance until wife died or remarried, we affirm the disposition of the insurance policies by the trial court based on this presumed proper purpose. Upon remand, the trial court should consider provisions for re-assignment of ownership to husband upon wife's remarriage or death since his obligation for payment of spousal maintenance, presumably secured by the assignment of ownership, would terminate.

## IV

### POST–JUDGMENT MODIFICATION ORDER ENTERED DURING PENDENCY OF APPEAL IS VOID

■ A judgment and decree of dissolution was entered on December 23, 1982. After a series of motions by both parties to amend the decree (none of which involved provisions for payment of liabilities, including taxes), the court on August 24, 1983, entered its judgment and decree of dissolution as amended. After that decree was signed and the parties filed timely notices of appeal and cross-appeal, the trial court held a hearing on wife's petition asking the

court to order husband to pay state and federal income taxes incurred for the tax year 1982. The provisions of the August 24, 1983 decree as amended covered the parties' liability for taxes. On March 13, 1984, the trial court ordered husband to pay wife $3,500 considered as spousal maintenance for tax purposes. A notice of appeal was timely filed by husband, and the issues raised were consolidated for our review with his appeal from the decree of dissolution as amended August 24, 1983.

We agree with husband's argument that the trial court lacked jurisdiction to modify the decree of dissolution as amended regarding payment of taxes and spousal maintenance. After both parties had perfected appeals, the court could not entertain post-judgment motions, except in furtherance of the appeals. *Burkhardt v. Burkhardt*, 109 Ariz. 419, 510 P.2d 735 (1973); *Ackel v. Ackel*, 57 Ariz. 14, 110 P.2d 238 (1941); *Budreau v. Budreau*, 134 Ariz. 539, 658 P.2d 192 (App.1982). We can find no Arizona statute or rule which would support the court's actions in amending and modifying provisions of the decree during the pendency of the appeals, and we reverse and vacate the trial court's March 13, 1984 order.

## V

### ATTORNEY'S FEES

Wife was awarded $3,000 by the trial court for attorney's fees to pursue this appeal. Wife requests that we award additional attorney's fees. It is our opinion that there are sufficient community assets which will be equitably divided by the trial court to allow each party to pay their own attorney's fees, and none are awarded.

This matter is reversed and remanded to the trial court for further proceedings consistent with this opinion.

HATHAWAY, P.J., and LIVERMORE, J., concur.