732 P.2d 208

Robert K. MITCHELL, Petitioner/Appellant/Appellee/ Cross-Appellee,

v.

Carole Anne MITCHELL, Respondent/Appellee/Appellant/ Cross-Appellant.

No. CV 86 0022–PR.

Supreme Court of Arizona, En Banc.

Jan. 30, 1987.

318

John S. Schaper, Phoenix, for petitioner/appellant/appellee/cross-appellee.

Lewis and Roca by Jeremy E. Butler, John P. Frank, Paul G. Ulrich, Phoenix, for respondent/appellee/appellant/cross-appellant.

HOLOHAN, Justice.

Carole Anne Mitchell, appellant, sought review by this court of the decision of the Court of Appeals in *Mitchell v. Mitchell*, 152 Ariz. 312, 732 P.2d 203 (App.1985). We granted review to clarify the proper treatment to be accorded goodwill in a professional partnership under Arizona community property laws. The issues on review are:

1. In a marital dissolution proceeding is there a community property interest in the goodwill of a professional practice conducted as a partnership?

2. If so, did the wife forfeit her claim to the goodwill asset of the husband's ongoing CPA practice as a result of signing a partnership agreement that specified that no value be placed on the firm's goodwill?

We have jurisdiction under Arizona Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

The parties were married in 1954 and have two adult children. The appellee husband received his degree in accounting in 1958. Appellant was not employed outside

the home for most of the marriage. The couple moved to Arizona in 1958 where the appellee joined a national accounting firm. He was licensed as a Certified Public Accountant (CPA) in 1960. Several years later, appellee and two associates formed a partnership which lasted until 1968. From 1968 until 1975, appellee practiced as a sole practitioner. In 1975 he entered into an accounting partnership with Earl Hardy under the firm name of Mitchell & Hardy. A third person joined the partnership in 1978, but he withdrew before the end of 1979.

Since 1979 Mitchell & Hardy has operated under a written partnership agreement that was admitted in evidence. The agreement, signed by both appellee and appellant, provides in pertinent part:

17. **GOODWILL.** The parties to this partnership agreement specifically intend that no value be placed upon any Goodwill of the firm that may exist, and therefore, specify that no valuation shall be attempted in eventual determination of a partner's interest in the net assets of the partnership, its capital or for any other purpose.

Although the 1979 agreement specified no valuation for goodwill, it did contain special provisions providing for payments of money to a partner upon retirement or death. The provisions for such payments were not limited to the firm's tangible assets and accounts receivable but also included a share of the net profits for a limited period.

The trial court in granting a dissolution found *inter alia* that the community interest in the partnership was valued at $150,-000. This sum included an amount for the partnership capital assets and goodwill. The Court of Appeals, Division II, reversed the judgment of the trial court and remanded the case for a redetermination of the value of the partnership interest without placing any value on goodwill. The Court of Appeals ruled that appellant was bound by the terms of the partnership agreement which placed a zero valuation on goodwill. The Court of Appeals also held that the goodwill of a professional partnership is not a divisible community asset. In doing so the court distinguished *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (App.1981), which held that the goodwill of a professional corporation was property subject to equitable distribution under A.R.S. § 25–318. The court analogized the goodwill of a partnership to a personal achievement such as an educational degree which cannot be exchanged on the open market, citing *Pyeatte v. Pyeatte*, 135 Ariz. 346, 661 P.2d 196 (App.1982); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981).

## I. IS GOODWILL OF A PROFESSIONAL PARTNERSHIP A COMMUNITY PROPERTY ASSET?

The concept of "goodwill" is elusive, leading over the years to a variety of judicial definitions. *Wisner v. Wisner*, 129 Ariz. at 337, 631 P.2d at 119, *citing* Vol. 38 C.J.S. *Good Will*, § 1; 38 Am.Jur.2d *Good Will* § 1, and cases cited therein. The definitions range from the narrow view of goodwill as a probability of repeat customers, Annot., *Accountability for Good Will of Professional Practice in Actions Arising from Divorce or Separation*, 52 A.L. R.3d at 1344 n. 1, to its broadest sense as reputation, *Spheeris v. Spheeris*, 37 Wis.2d 497, 155 N.W.2d 130, 135 (1967). In Arizona, it has been defined as "that asset, intangible in form, which is an element responsible for profits in a business." *Jacob v. Miner*, 67 Ariz. 109, 120, 191 P.2d 734, 741 (1948).

In *Wisner*, the Court of Appeals held that the goodwill of a professional corporation is based on numerous factors, including: "the practitioner's age, health, past earning power, reputation in the community for judgment, skill and knowledge, and his or her comparative professional success." 129 Ariz. at 337–38, 631 P.2d at 119–20. *Wisner* relied upon a case from California and a case from Washington, both of which discussed goodwill within the context of marital dissolution proceedings. Both cases surmounted the difficulty of valuing professional goodwill while holding

that indeed there *was* goodwill in the professional partnership/and sole proprietorship at issue. *In re Marriage of Lukens,* 16 Wash.App. 481, 558 P.2d 279 (1976) (goodwill of sole medical practice a divisible marital asset regardless of asset's marketability); *In re Marriage of Lopez,* 38 Cal. App.3d 93, 113 Cal.Rptr. 58 (1974) (whenever the issue is raised, trial court must make specific finding of the existence and value of the goodwill of a professional practice whether in the form of sole practice, partnership or professional corporation). *Wisner* dealt with a professional corporation with one shareholder, but it is instructive in its description of the factors to be considered in establishing the value of goodwill in a professional practice. We believe that the *Wisner* principles are equally applicable to a professional partnership. *Wisner* does not support appellee's argument that a partner's goodwill is a personal, non-divisible asset because it is not readily marketable.

■ It would be inequitable to hold that the form of the business enterprise can defeat the community's interest in the professional goodwill. Such a result ignores the contribution made by the non-professional spouse to the success of the professional, especially when the marriage spans as many years as in the present case. Under community property principles the wife made the same contribution to the community asset of the professional partnership as she would have made had the business been a professional corporation. As one court has stated:

> Under the principles of community property law, the wife, by virtue of her position as wife, made to that value [goodwill] the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.

*Golden v. Golden,* 270 Cal.App.2d 401 at 405, 75 Cal.Rptr. 735 at 738 (1969).

■ The confusion in this area of the law exists partially because many of the cases concerning the existence and evaluation of goodwill involve partnership dissolution, and not marital dissolution. Often the valuation of partnership assets, including goodwill, is controlled by the partnership agreement. In this case we are dealing with a marital dissolution which does not affect the continuation of the business partnership. The current situation is aptly described as follows:

> A professional practice goes automatically to the spouse licensed to practice it. He is not selling out or liquidating, but continuing in business. Effectively, it is the case of the silent partner withdrawing from a going business. And, if such partner is to receive fair compensation for her share, or her enforced retirement, it should be so evaluated.

*Brawman v. Brawman,* 199 Cal.App.2d 876, 882, 19 Cal.Rptr. 106, 109–10 (1962).

■ Finally, a professional practice's intangible goodwill is not the same as a professional license or degree, neither of which have been treated as community property within the meaning of A.R.S. § 25–211. *Wisner v. Wisner, supra.* The better analogy is to pension rights which are marital property. Goodwill and pension rights acquired during the marriage are community assets, although in a form where the enjoyment is deferred. *See Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234 (1986); *In re Marriage of Slater,* 100 Cal.App.3d 241, 160 Cal.Rptr. 686 (1979); *In re Marriage of Fonstein,* 17 Cal.3d 738, 552 P.2d 1169, 131 Cal.Rptr. 873 (1976). The partnership agreement in this case recognizes the firm's intangible value above tangible assets by providing special compensation in the event of retirement, death or disability of a partner. The agreement implicitly recognizes that there is an intangible value to the partnership above the tangible assets that should be paid for by the partners who continue the practice.

We note that some jurisdictions hold that the goodwill of a professional partnership or proprietorship is not a divisible marital

asset. *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218, 223–24 (1982); *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Austin v. Austin,* 619 S.W.2d 290 (Tex.Civ.App.1981). However, because the professional practice of the sole practitioner or partner will continue after dissolution of the marriage, with the same goodwill as it had during the marriage, we find that a refusal to consider goodwill as a community asset does not comport with Arizona's statutory equitable distribution scheme. We prefer to accept the economic reality that the goodwill of a professional practice has value, and it should be treated as property upon dissolution of the community, regardless of the form of business. *Wisner v. Wisner, supra* (corporation); *In re Marriage of Fonstein, supra* (partnership); *In re Marriage of Watts,* 171 Cal.App.3d 366, 217 Cal.Rptr. 301 (1985) (partnership); *In re Marriage of Fenton,* 134 Cal.App.3d 451, 184 Cal.Rptr. 597 (1982) (corporation); *In re Marriage of Slater, supra* (partnership); *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974) (sole practice); *In re Marriage of Lopez, supra* (partnership); *Golden v. Golden, supra* (sole practice); *In re Marriage of Hull,* 712 P.2d 1317 (Mont.1986) (professional corporation); *Lockwood v. Lockwood,* 205 Neb. 818, 290 N.W.2d 636 (1980) (partnership); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1982) (solely owned professional corporation); *In re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175 (1984) (professional corporation); *Matter of Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979) (sole practice); *Marriage of Lukens, supra* (sole practice).

The trial court did not err in treating the goodwill of a professional partnership as a community asset.

## II. DID THE WIFE FORFEIT HER CLAIM TO GOODWILL AS A RESULT OF SIGNING THE PARTNERSHIP AGREEMENT?

In Arizona, property acquired during the marriage is presumed to be community property. *Cockrill v. Cockrill,* 124 Ariz. 50, 601 P.2d 1334 (1979). This presumption may be rebutted by clear and convincing evidence. *Id.* For instance, substantial evidence may be offered that a party has made a gift of his or her interest in the community property. *Neely v. Neely,* 115 Ariz. 47, 563 P.2d 302 (App.1977). A married couple may also agree to settle and adjust all property rights arising from the marriage, absent fraud and undue influence. *Wick v. Wick,* 107 Ariz. 382, 489 P.2d 19 (1971). Where the intent is clear, effect will be given to that intent. *Neely v. Neely, supra.*

In the instant case, the Mitchell & Hardy agreement, although signed by appellant, does not purport to give her share of the goodwill value of the partnership to appellee; neither does it change the character of the partnership's goodwill from community to separate property. It does not divide the marital property between Husband and Wife, because its only purpose was to provide a method of dealing with forms of withdrawal of a partner from the partnership. Appellee testified that he "never dreamed" that the goodwill clause in the agreement would have any application to the dissolution of his marriage.

The real issue is what is the effect on the community estate of appellant's signature on the agreement when appellee has not withdrawn from the partnership? This question is one of first impression in Arizona. Other courts that have considered the question have come to different conclusions. Appellee cites authority which holds that the value of the community property is governed by the partnership agreement. *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983); *Holbrook v. Holbrook, supra.*

We believe the better approach is to consider the terms of the partnership agreement as one factor in the determination of the value of the community interest in goodwill without treating the agreement as conclusive. *In re Marriage of Slater,* 100 Cal.App.3d at 246–47, 160 Cal.Rptr. at 689; *In re Marriage of Fonstein,* 131 Cal.Rptr. at 877, 552 P.2d at 1173; *Weaver v. Weaver,* 72 N.C.App. 409, 324 S.E.2d 915 (N.C. App.1985). This approach recognizes that

partnership agreements are designed to deal with particular aspects of the business, and simply do not address the considerations involved in valuation for a marital dissolution. Clauses which establish value of assets between partners may be only minimally relevant when a partner's business continues but the partner's marriage ends.

In *Slater,* California addressed substantially the same issues that are before us today. In that case, the husband relied on a medical partnership agreement signed by both him and his wife which provided for a "buy back" by any partner wishing to continue the business in the event of a partner's death, withdrawal or expulsion. The relevant section of the agreement read as follows:

> The purchase price shall be the ... partner's interest in the capital account ... plus the total of the accounts receivable less than six months old. ... Capital account ... shall mean supplies, inventory, equipment, fixtures, cash, securities ... excepting accounts receivable. ...
>
> The partners mutually agree that *a portion of the purchase price as determined above includes the sale of their interest in the goodwill of the partnership....*

100 Cal.App.3d at 245, 160 Cal.Rptr. at 688 (emphasis added by the *Slater* court).

The California trial court did not assign any value to the partnership's goodwill because it was considered to be in the accounts receivable *which a partner forfeited upon withdrawal.* On appeal, the court rejected "the husband's irrelevant contention that the wife was bound by the terms of the agreement that she cosigned. The agreement was not signed for purposes of dissolution." 100 Cal.App.3d at 245, 160 Cal.Rptr. at 688. The court stated that it would not allow an accounting concept to override community property principles. 100 Cal.App.3d at 246–47, 160 Cal.Rptr. at 689.

Further, in analogizing the husband's interest in the partnership to that of a pension right, the *Slater* court stated the asset to be divided in the dissolution was the husband's interest in the partnership, not his contractual withdrawal rights, 100 Cal. App.3d at 243–44, 160 Cal.Rptr. at 688–689; and although those rights may provide some indication of the value of the community interest, that indication alone is not determinative. 100 Cal.App.3d at 244, 160 Cal.Rptr. at 689. The "community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage." *In re Marriage of Foster,* 42 Cal.App.3d 577, 584, 117 Cal.Rptr. 49, 53 (1974).

■ We agree with the reasoning of the *Slater* court. We further note that as in *Slater,* the professional spouse here did not withdraw from the partnership. Thus the "no goodwill" clause was never triggered. Appellee's contention that there is no goodwill to value at the time of the marital dissolution simply ignores the fact that if the partnership were sold to a third party, the firm's purchase price would generally include goodwill. Both appellee and his expert witness testified that accounting practices are bought and sold in Arizona for an amount over and above the value of the firm's tangible assets, and that the "gross fees" approach is commonly used to evaluate such sales. Appellee's expert conceded on cross-examination that if the partnership were sold, appellee's share would be at least $160,000, including its intangible value. Finally, appellee testified that if he could retire under the present partnership agreement he would receive approximately $140,000. The proper focus in this case is therefore upon the partnership's value as a continuing unit rather than on its value based upon what would happen if appellee withdrew from the partnership. From this perspective, there is true economic value in the partnership; it is value properly divisible upon dissolution of the marital community. We therefore hold that appellant's signature on the partnership agreement did not end her right to her share of the value of the goodwill in the ongoing partnership.

## III. VALUATION

■ Because we hold that there is goodwill in appellee's professional practice and

that appellant did not forfeit her interest by signing the partnership agreement, we must address appellee's contention that the trial court erred in valuing the goodwill. In reviewing the findings below, we will view the evidence in the light most favorable to support the decision. *Johnson v. Johnson*, 131 Ariz. 38, 44, 638 P.2d 705, 711 (1981). The finding will be upheld if there is any reasonable evidence to support it. *Id.*

It is a difficult task at best to arrive at a value for the intangible component of a professional practice attributable to goodwill. "No rigid and unvarying rule for the determination of the value of goodwill has been laid down by prior case law and each case must be determined on its own facts and circumstances." *Wisner v. Wisner, supra; see also,* Annot. *Accountability for Good Will of Professional Practice in Actions Arising from Divorce or Separation,* 52 A.L.R.3d at 1344.

In the instant case, the trial court heard testimony from four CPAs, including appellee. The partnership's estimated goodwill value ranged from zero according to appellee, to $160,000 according to appellant's experts. Based upon testimony of appellee's own expert that (1) accounting practices are bought and sold in Arizona and (2) the gross fees approach is preferable to the excess earnings method advocated by appellant, the trial court arrived at a total value of $150,000 for the practice, including its tangible assets. The record indicates the latter to be no more than $35,000. The trial court's final figure also included an offset for a one time "windfall" of approximately $12,000 in fees to prevent an inflated valuation. Although the court did not separately value the firm's goodwill, tangible assets or the "windfall" offset, we cannot say as a matter of law that the trial court erred in its valuation. An adequate basis exists in the record in the form of expert testimony which reasonably supports the valuation of the partnership. Nevertheless, more precise findings are preferable. As a general rule, "the court should clearly state whether it finds the practice to have any goodwill, and if so, its value, and how it arrived at that value."

*Poore v. Poore,* 75 N.C.App. 414, 331 S.E.2d 266 (1985). However, because the trial court stated that it utilized the gross fees approach advocated by appellee's own expert, and the valuation was reasonably supported in the record by expert testimony, we find no error.

We vacate that portion of the Court of Appeals' decision relating to goodwill in a professional practice. The case is remanded to the superior court for further proceedings.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

HAYS, J., Retired, did not participate in the determination of this matter.