888 P.2d 1333

**In re the MARRIAGE OF John F. MOLLOY, Respondent– Appellant, Cross Appellee.**

**John F. MOLLOY, Petitioner– Appellee, Cross Appellant,**

v.

**E. Josephine MOLLOY, Respondent– Appellant, Cross–Appellee.**

**Adela Allen Molloy, Intervenor, Cross–Appellant.**

No. 2 CA–CV 91–0053.

Court of Appeals of Arizona, Division 1, Department C.

June 9, 1994.

Reconsideration Denied July 21, 1994.

Review and Cross–Petition, for Review Denied Feb. 22, 1995.*

* Feldman, C.J., and Zlaket, J., of the Supreme Court, recused themselves and did not participate in the determination of this matter.

Sandra S. Froman, Snell & Wilmer, Phoenix, for petitioner/appellee, cross-appellant, John F. Molloy.

Philip Gerard, O'Connor Cavanagh, Phoenix, for respondent-appellant, cross-appellee.

Paul G. Rees, Paul G. Rees, P.C., Tucson, for intervenor, cross-appellant.

## OPINION

LANKFORD, Presiding Judge.

This action arises from the valuation of a marital asset upon dissolution. The parties appeal and cross-appeal from an order valuing the marital community's interest in the goodwill of the husband's law practice.

This is the second appeal in this dissolution action. *See Molloy v. Molloy,* 158 Ariz. 64, 761 P.2d 138 (App.1988). The wife now appeals, arguing that the superior court misapplied our holding in the prior appeal. We agree with the wife: the superior court erred by failing to consider the value of the husband's *entire* interest rather than just the "goodwill" component. However, this error was harmless: The wife's valuation of the husband's interest, which was based on the husband's share of the firm's net assets, was deficient as a matter of law because the wife's evidence fails to show that the husband will realize a real economic benefit from the assets. Thus, we reject the wife's appeal.

The husband cross-appeals, arguing that the evidence does not support the superior court's award of goodwill. We hold that sufficient evidence exists to support an inference that goodwill exists and to support the amount awarded. Therefore, we also deny the cross-appeal.[1]

The husband petitioned for divorce in 1984. The husband, who was near retirement age, practiced law in the firm of Molloy, Jones, Trachta, Childress and Mallamo, P.C. The law firm was a professional corporation, in which the husband owned four percent of the outstanding stock. Although the parties agree that the husband's interest in the law firm is a community asset subject to equitable distribution, they dispute the value of the interest.

The case was originally tried in 1985. The wife moved for permission to use community funds to hire an expert to value the husband's interest. The superior court denied the motion. The superior court then ruled that the value of the husband's interest could be shown *only* through the husband's agreements with the firm.[2] After this ruling, the parties stipulated to the value of the agreements.

The wife appealed that judgment.[3] We reversed and remanded, holding that the superior court had improperly restricted the wife from presenting expert testimony valuing the community's interest in the law firm and holding that goodwill is an asset subject to inclusion in the marital community. *Id.* at 65, 68, 761 P.2d at 139, 142.

On remand, the husband sought to exclude proof of all value except a goodwill value. The husband's motion in limine asserted that the parties' stipulations from the first trial were still in effect and prevented the wife from revaluing the husband's interest.[4] The husband contended that the previous decision

1. Because we affirm the superior court's judgment it is unnecessary for us to address the brief of intervenor Adela Allen Molloy, husband's current wife. She intervened to obtain an order entitling her to participate in this action if it were sent back for a new trial.

2. These agreements consisted of a stock redemption agreement, a deferred compensation agreement, a pension plan trust, and a profit sharing plan and trust. The parties did not put the value of the pension plan trust and the profit sharing plan and trust at issue.

3. On appeal the wife presented the following issue:

Did the trial court commit reversible error by precluding Wife from obtaining and introducing evidence regarding a value to be placed on Husband's interest in his law firm, including goodwill, thus reducing the community estate to be divided?

4. The wife's counsel on remand, who was new to the case, was unaware of the stipulations until the hearing on remand was held. At that hearing, the husband resubmitted the stipulations to the court and argued the parties were still bound by them. The wife opposed the use of the prior stipulations.

on appeal held only that the wife was entitled to show a goodwill value.

The superior court initially denied this motion. The court permitted the wife to introduce expert testimony valuing the husband's *entire* interest. Her expert valued the husband's interest by calculating the husband's share of the firm's net assets and then adding a goodwill value. To arrive at the husband's share of the firm's net assets, the expert calculated the actual value of all of the firm's assets, subtracted its liabilities, and then multiplied this net figure by the husband's ownership percentage. To show the value of the husband's goodwill, the expert relied on payments the husband would receive under the deferred compensation agreement.

After the wife presented all of her evidence, however, the court reversed itself and ruled that it would only consider evidence of the goodwill. The court then awarded the wife $30,000 as her share of the husband's goodwill. This appeal and cross-appeal ensued.

■ We first consider the wife's appeal. She argues that the superior court erred because it did not follow the holding of our prior decision on appeal. She asserts that our decision entitled her to show the value of the husband's entire interest.

■ On remand, a superior court must "strictly follow" the mandate of an appellate decision. *Vargas v. Superior Court*, 60 Ariz. 395, 397, 138 P.2d 287, 288 (1943). We review whether the superior court followed the appellate court's mandate *de novo*.

The superior court did not fully explain the basis of its decision not to consider the wife's

evidence except for goodwill. Its minute entry order stated:

> The court having examined the pretrial statement of the parties, and the Court of Appeals decision, and regardless of the previous ruling of this court permitting respondent wife to reexamine the basis of the evaluation of the law firm in all its particulars ... this court is satisfied this examination should be only into ascertaining the existence of goodwill....

We first consider our prior decision on appeal. We determined that the superior court had erred by "denying [the wife] the opportunity to present a valuation exceeding that derived from the agreements among the shareholders." *Molloy*, 158 Ariz. at 68, 761 P.2d at 142. We consequently held that the wife was denied "a fair trial on the question of the value of the [h]usband's practice." *Id.*

This broad language was a mandate to allow the wife to hire an expert to present a valuation of the husband's entire interest. Therefore, on remand, the superior court was required to consider the wife's evidence of the value of the husband's entire interest. It erred when it failed to do so.

■ The husband argues, however, that the superior court properly precluded the wife from introducing a valuation of the husband's entire interest because of her stipulation from the first trial that the only contested valuation issue was the value of the husband's goodwill in excess of the firm agreements, if any.[5]

We conclude that the wife is not bound by her stipulations on the value of the husband's interest in the law firm. The record shows that the wife intended to retain an expert to value the husband's entire interest. The court's mistaken ruling denying her an expert left the wife incapable of contesting the husband's valuation. Indeed, in the first appeal we stated that the superior court's rulings "denied her the opportunity to present a

---

5. This stipulation was made despite the fact that the superior court had already denied the wife's request for an expert and excluded proof of any value in excess of the firm agreements. Neither party explains why they made this apparently meaningless stipulation.

valuation." *Id.* It was after this ruling that the parties executed these stipulations. It is clear from these circumstances and from the wife's subsequent appeal [6] that she never intended to abandon her opportunity to present an alternative valuation in a later proceeding. Thus, the parties stipulated to the value of the husband's interest only for purposes of the first trial. *See Harsh Bldg. Co. v. Bialac,* 22 Ariz.App. 591, 593, 529 P.2d 1185, 1187 (App.1975) (primary rule in giving effect to stipulations is to determine the parties' intent in the circumstances); 7 AM. JUR.2D *Stipulations* §§ 7, 10 (1974) (stipulations should be construed "consistent with the apparent intention of parties, the spirit of justice, and the furtherance of trials upon the merits").

Thus, despite the stipulations from the first trial, the wife was entitled to introduce independent evidence valuing the husband's entire interest on remand. The superior court failed to follow the appellate mandate when it did not consider the wife's valuation of that interest.

■ Not all errors in the superior court warrant reversal, however. We will reverse only if the complaining party suffers prejudice as a result of the error. *See Walters v. First Fed. Sav. & Loan Ass'n,* 131 Ariz. 321, 326, 641 P.2d 235, 240 (1982). Prejudice must appear affirmatively from the record. *Id.*

■ In this case, the superior court permitted the wife to introduce her evidence. Consequently, we have a complete record of her valuation and supporting evidence. The wife has suffered prejudice only if her evidence could support a finding of value in excess of the judgment. We therefore review the wife's evidence to determine whether she has suffered prejudice from the superior court's error.

The wife valued the husband's interest by determining the firm's actual net assets and multiplying them by the husband's percentage ownership. The wife asserts that this is the proper method, as a matter of law, to value the husband's interest. She contends that any valuation method that ignores the value of the firm's assets, such as accounts receivable and work in process, undervalues the husband's interest and cannot constitute an equitable recognition of the community interest. In support of her method of valuation she cites *In re Marriage of Goldstein,* 120 Ariz. 23, 583 P.2d 1343 (1978), and *In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974).

A superior court may use a variety of methods to value a professional practice. *See* Dag E. Ytreberg, Annotation, *Evaluation of Interest in Law Firm or Medical Partnership for Purposes of Dividing Property in Divorce Proceedings,* 74 A.L.R.3d 621 (1976); *In re Marriage of Huff,* 834 P.2d 244, 257 n. 17 (Colo.1992); *In re Marriage of Fonstein,* 17 Cal.3d 738, 131 Cal.Rptr. 873, 877, 552 P.2d 1169, 1173 (1976) (contractual withdrawal rights used to value interest); *cf. In re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175, 179–80 (1984) (listing five methods of valuing goodwill). The selection of a valuation method is a factual determination. *Huff,* 834 P.2d at 257 n. 17. The valuation in each case must be determined on its "own facts and circumstances." *See Mitchell v. Mitchell,* 152 Ariz. 317, 323, 732 P.2d 208, 214 (1987) (quoting *Wisner v. Wisner,* 129 Ariz. 333, 631 P.2d 115 (App.1981) (discussing valuation of goodwill)).

We do not think the superior court was obligated to apply *Goldstein* to the facts of this case. *Goldstein* held that the accounts receivable of a *sole practitioner* must be included as an asset when valuing a sole practitioner's practice. 120 Ariz. at 24, 583

---

6. The wife's issue on appeal stated that she was entitled to an expert to value the husband's entire interest. We also note that the husband did not argue in that appeal that the value stipulations limited the relief the wife was entitled to.

P.2d at 1344. A sole practitioner owns his accounts receivable, including the right to collect and keep the proceeds. This case involves a lawyer who owns a minority interest in a law firm. The law firm owns the accounts receivable which the lawyers generate. Of course, we do not distinguish *Goldstein* merely on the form of the enterprise. *See Mitchell,* 152 Ariz. at 320, 732 P.2d at 211 (form of business enterprise cannot defeat community interest in goodwill). The critical difference is that in our case the husband has entered into agreements with the firm that limit the husband's ability to realize the value of the firm's assets. The wife has not shown how the husband will *realize an economic benefit* from the firm's assets other than as provided by the firm agreements.[7]

In *McCabe v. McCabe,* 525 Pa. 25, 575 A.2d 87 (1990), the Pennsylvania Supreme Court addressed a substantially similar valuation issue. The husband owned a 6.3 percent partnership interest in a law firm. *Id.* 575 A.2d at 88. The trial court valued the husband's interest as his proportionate share of the firm's net assets including accounts receivable and work in process. *Id.* The Pennsylvania Supreme Court reversed. *Id.*

The *McCabe* court reversed the trial court because the husband would never *realize* a proportionate share of the firm's net assets. *Id.* 575 A.2d at 89 (affirming the appellate court). The husband's partnership agreement had narrowly defined the partners' rights to firm assets. *Id.* 575 A.2d at 89–90. A partner could not remove his proportionate share of the assets, sell his interest, force the firm to be sold or liquidate it. *Id.* 575 A.2d at 89.

From this, the *McCabe* court concluded that it would be inequitable to value the husband's interest as his proportionate share of the firm's net assets. *Id.* In such circumstances, a valuation that appraised value as though the partnership agreement limitations were not in effect "would be a fiction." *Id.* 575 A.2d at 90. The court held that the proper valuation method on these facts was to determine the value of the partnership agreement, which fixed a partner's compensation upon withdrawal.[8] *Id.* 575 A.2d at 88.

■ We agree with the *McCabe* court that a valuation must be based on *realizable* benefits. This holding is consistent with the Arizona Supreme Court's language in *Mitchell* that only a "true economic value" is divisible upon dissolution. 152 Ariz. at 322, 732 P.2d at 213. A valuation that is not based on real economic benefits would be inequitable and in conflict with the legislative mandate to equitably distribute marital property. *See* A.R.S. § 25–318(A) (permitting equitable distributions). Thus, we hold that only realiza-

---

7. We also reject the wife's argument that the superior court was required as a matter of law to apply the valuation methodology espoused in *In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 Cal. Rptr. 58 (1974). Like *Goldstein, Lopez* held that the value of an interest in a law firm is the spouse's proportionate share of the partnership's net assets. *Id.* at 110, 113 Cal.Rptr. at 69. In *Lopez* the husband owned a 50 percent interest in the partnership and there was no evidence that he would not realize real economic value from his proportionate share of the partnership assets. *See id.* at 100–05, 113 Cal.Rptr. at 62–65. The *Lopez* court noted that *"the economic value of any asset is based upon the future receipts which the assets will produce." Id.* at 108, 113 Cal. Rptr. at 67 (discussing goodwill (quoting Bedford, Handbook of Modern Accounting, at 19–5 (Davidson ed. 1970)). We agree with this principle of valuation. We think the *Lopez* valuation approach is warranted only where the spouse's share of the net assets reflects the community's realizable economic benefits.

8. The valuation of goodwill was not at issue in *McCabe.* The court did note, however, that future income is not subject to equitable distribution. At least one other court has interpreted *McCabe* to support the proposition that goodwill is not subject to equitable distribution. *See Mocnik v. Mocnik,* 838 P.2d 500, 504 (Okla.1992) (holding goodwill is not realizable).

We do not endorse such a sweeping rule. It is true that in Arizona future income is not subject to equitable distribution. However, future income that is a result of goodwill that existed at the time of dissolution and not as a result of the spouse's labors alone is properly included in the marital community estate. *Molloy,* 158 Ariz. at 67, 761 P.2d at 141 (defining goodwill as enhanced future earning capacity due to "probable future patronage").

ble economic benefits may be included in the community estate.

After a consideration of all the circumstances in the record, we conclude that the wife failed to show that the husband could expect to realize his share of the firm's assets. The husband has no rights to the firm assets other than as provided by the firm agreements. The firm agreements limit his right to cash out his interest or otherwise convert it to cash. He may sell his stock only to the firm at the agreed price upon withdrawal.[9]

The wife argues that the accounts receivable and work in process should be equitably divided because they are valuable assets earned by the husband during the marriage.[10] We agree that the husband's interest in these assets should be included in the marital community to the extent that the husband will realize real economic benefits from these assets.

The record reveals that the only realizable economic benefits that the husband will receive, however, are those provided under the firm shareholder agreements. The firm retains any revenue ultimately collected from accounts receivable and work in process. The evidence does not show that the husband has a right to receive a portion of the revenue collected by the firm.[11] While firm revenue will fund the husband's future salary and bonus payments, if any, it is undisputed that the husband will earn his post-dissolution compensation with post-dissolution services. Future salary is not subject to equitable distribution. *Molloy*, 158 Ariz. at 67, 761 P.2d at 141. When the husband leaves the firm, he will not be entitled to share in revenue collected on the accounts receivable and work in process he generated. Instead, he is entitled to receive only deferred compensation benefits calculated on the basis of accounts receivable and work in process. Thus, the evidence shows that the husband will not realize a proportionate share of the firm's accounts receivable and work in process other than as provided in the firm agreements.

For these reasons, we reject the wife's valuation evidence as insufficient as a matter of law. She failed to show that the assets have an economic value to the husband other than that provided in the husband's agreements with the firm. Therefore, the superior court's failure to consider her valuation evidence was harmless error.

We next consider the husband's cross-appeal. The husband challenges the sufficiency of the evidence supporting the superior court's award for goodwill value. We will uphold the superior court's finding if there is "any reasonable evidence to support it." *Mitchell,* 152 Ariz. at 323, 732 P.2d at 214; *see also Porter v. Porter,* 67 Ariz. 273, 285, 195 P.2d 132, 140 (1948) (reversing a trial court's finding that marital property existed because no substantial evidence supported the finding). We view the evidence in a light most favorable to upholding the superior court's decision. *Mitchell,* 152 Ariz. at 323, 732 P.2d at 214.

■ We reject the husband's argument that his interest in the firm's goodwill should be separate property. This issue was decided in *Mitchell* and *Molloy. Mitchell* ex-

---

9. The husband could realize his proportionate share of the firm's net assets only if the firm were dissolved or merged. That event would have to occur prior to the husband's retirement from the firm. The wife did not allege that such an event would occur.

10. The wife argued in her post-trial brief to the superior court that the husband received the benefit of his accounts receivable and work in process in the form of compensation in the years following the dissolution. The wife has not made this argument on appeal, however, and therefore we need not consider it. *See State Farm Mut.*

*Auto. Ins. Co. v. Novak,* 167 Ariz. 363, 370, 807 P.2d 531, 538 (App.1990).

11. The record indicates that the husband receives salary only for his own work, which does not include a profit from the work of others. The wife has not shown that the husband will receive any profits other than that share of the profits that the husband will realize in the payments he receives under the stock redemption agreement.

pressly held that Arizona's equitable distribution scheme requires the recognition of goodwill as a community asset. 152 Ariz. at 321, 732 P.2d at 212. *Molloy* held that "a shareholder's interest in his law firm's goodwill is an asset subject to expert valuation and inclusion in the marital community estate." 158 Ariz. at 65, 761 P.2d at 139. Thus, the superior court properly regarded *goodwill* in a professional partnership as community property.

The husband next argues the evidence fails to support a finding that goodwill existed, and that it fails to support the amount of the award. The husband points out that there is no evidence that he will ever have any "excess earnings," which is the only proper method to value goodwill. He asserts that the superior court merely speculated on the existence of a goodwill value.

Although "[i]t is a difficult task at best to arrive at a value for the intangible component of a professional practice attributable to goodwill," *Mitchell*, 152 Ariz. at 323, 732 P.2d at 214, the evidence nonetheless supports the superior court's valuation. The superior court's minute entry order reveals that the court relied on the deferred compensation agreement as evidence that goodwill existed. The agreement expressly recognizes that firm members share in firm goodwill. Indeed, the husband admitted in the first appeal that the deferred compensation agreement is intended to compensate a withdrawing partner for his contributions to the firm's goodwill. *Molloy*, 158 Ariz. at 67, 761 P.2d at 141. This agreement is adequate evidence to establish that the firm possessed goodwill. *See Mitchell*, 152 Ariz. at 320, 732 P.2d at 211 (firm agreements recognized that the firm possessed goodwill).

The deferred compensation agreement also supports the court's finding that valued goodwill at $60,000. A court is not required to use any one specific method to value goodwill. *Id.* at 323, 732 P.2d at 214. The wife's expert testified that based on an analysis of payments under the deferred compensation agreement, the value the husband will re-

ceive for his contributions to firm goodwill is in excess of $60,000. The right to receive the payments represents real economic benefit. The wife's evidence is particularly compelling because the husband argued in the prior appeal that valuation of the firm's goodwill should be controlled by the firm agreements. *See Molloy*, 158 Ariz. at 67, 761 P.2d at 141.

The husband lastly argues that it was improper for the superior court to base its valuation of goodwill on the deferred compensation agreement because the wife previously stipulated to value of that agreement in the first trial. We reject this argument, because as we have already discussed, the stipulations made on the value of the husband's interest were not binding on remand after the appeal. The evidence supports the finding that goodwill existed in the amount of $60,000.

Both parties have requested their attorneys' fees on appeal. Because the superior court found that both parties were able to pay their own fees and declined to award attorneys' fees, we decline to award fees on appeal.

Accordingly, the judgement of the superior court is affirmed.

NOYES and GARBARINO, JJ., concur.