NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MARILYN DRISS, *Petitioner/Appellee*,

*v.*

LEON DRISS, *Respondent/Appellant*.

No. 1 CA-CV 18-0243 FC
FILED 2-12-2019

Appeal from the Superior Court in Maricopa County
No. FN2016-006079
The Honorable Katherine M. Cooper, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

Hallier & Lawrence, PLC, Phoenix
By Andrea Christine Lawrence, Tabitha A. Jecmen
*Co-Counsel for Petitioner/Appellee*

Jones, Skelton & Hochuli PLC, Phoenix
By Eileen Dennis GilBride, Sean M. Moore (argued)
*Co-Counsel for Petitioner/Appellee*

Burt Feldman & Grenier, Scottsdale
By Sandra Burt
*Co-Counsel for Respondent/Appellant*

The Wilkins Law Firm, PLLC, Phoenix
By J. Edward Doman, Jr. (argued), Amy M. Wilkins
*Co-Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**        In this dissolution action, Leon Driss ("Husband") appeals from the valuation of his medical practice and award of spousal maintenance to Marilyn Driss ("Wife"). For the reasons stated below, we affirm the business valuation but reverse the award of spousal maintenance and remand for reconsideration.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The parties were married in 1984. Husband is 64 and a physician with a solo medical practice in Lakeside, Arizona. He is also employed as the medical director of a hospice group and works several shifts a month as a hospitalist in a Pinetop-Lakeside hospital. Wife is 65 and employed full-time as a social worker.

**¶3**        Wife filed for dissolution in 2016. Pending trial, Husband lived in the parties' Lakeside residence, and Wife lived in their Scottsdale residence. The court ordered the Lakeside residence sold and the proceeds equally divided. Wife was awarded the Scottsdale residence with an equalization payment due to Husband. At trial, each party called an expert witness to testify regarding the value of Husband's medical practice. Wife's expert, Susannah Sabnekar, conducted a computation of value and determined the practice had a value of $193,000. Husband's expert, Glenn Karlberg, performed a business valuation and concluded the practice had no value.

2

¶4 The superior court accepted Sabnekar's calculation of value and awarded Wife one-half of $193,000 as her share of Husband's medical practice. The court also found Wife was entitled to spousal maintenance and awarded her $2200 a month for five years. Husband timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

**DISCUSSION**

**A. The Valuation of Husband's Medical Practice Was Within the Superior Court's Discretion.**

¶5 Husband contends the superior court abused its discretion by accepting Sabnekar's calculation of the value when deciding the value of Husband's medical practice. "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51 (App. 1996). In considering Husband's argument that the record does not support the court's valuation, we view the evidence in the light most favorable to upholding the court's decision and will affirm the ruling if reasonable evidence supports it. *See In re Marriage of Molloy*, 181 Ariz. 146, 152 (App. 1994).

¶6 The superior court found Sabnekar's calculation of value more "well-founded" because she considered "a value for goodwill based on an accepted methodology" and Karlberg did not consider any value for goodwill. Husband argues the record does not support the finding of goodwill. The court concluded:

> Goodwill is a party [sic] of a service business like a primary care practice. Patients recommend their PCP to friends. They return where they receive good care. Husband has built his practice for 18 years. He is one of two primary physicians in his area. He states that he feels that the community depends on him to continue practicing.

Husband contends the court's definition of "goodwill" is incorrect. According to Husband, valuing goodwill is a mathematical conclusion based on whether he earns more than his peer group. Karlberg testified that

Husband did not earn more than his peers; therefore, there was no goodwill.[1]

¶7          Goodwill is not based on one element, but is determined after consideration of many factors, such as "the practitioner's age, health, past earning power, reputation in the community for judgment, skill and knowledge, and his or her comparative professional success." *Wisner v. Wisner*, 129 Ariz. 333, 337–38 (App. 1981). There is "[n]o rigid and unvarying rule" for determining the value of goodwill. *Id.* at 338; *see also Molloy*, 181 Ariz. at 153 (rejecting argument that excess earnings is "the only proper method to value goodwill" and holding "[a] court is not required to use any one specific method to value goodwill"); *Walsh v. Walsh*, 230 Ariz. 486, 493, ¶¶ 20–21 (App. 2012). The superior court did not abuse its discretion by rejecting Karlberg's more limited definition of goodwill and considering additional factors in deciding the goodwill value of the medical practice.

¶8          Husband also argues the superior court abused its discretion by relying on Sabnekar's calculation of value and disregarding Karlberg's more comprehensive business valuation. The experts presented the court with two vastly different values. Sabnekar performed only a market analysis, whereas Karlberg conducted income and asset analyses. Wife alleged several flaws in Karlberg's analyses, and Husband alleged deficiencies in Sabnekar's analysis. Deciding which approach to rely on was within the superior court's discretion. *See Mitchell v. Mitchell*, 152 Ariz. 317, 323 (1987) (upholding business valuation that was supported by expert testimony that a gross fees approach was preferable to excess earnings method proposed by a different expert); *Kelsey*, 186 Ariz. at 51.

¶9          Husband cites *Mortensen v. Mortensen*, 1 CA-CV 15-0097 FC, 2016 WL 3211196, at *3, ¶ 15 (Ariz. App. June 9, 2016) (mem. decision), where a wife retained an expert to conduct a "calculation of value" and the husband's expert provided an "opinion of value," similar to a business valuation. *Mortensen* concluded that the superior court properly rejected the calculation of value as "incomplete and unreliable" based on *specific*

---

[1]          Husband combines the income (approximately $186,000) from his two part-time jobs with the gross revenues from the practice into the practice's bank account. From these combined funds, Husband pays himself $255,000 annually. However, both experts testified that when the part-time incomes are backed-out, the practice can pay Husband $145,000 a year from its gross revenues.

deficiencies in that expert's analysis. *Id.* at ¶ 17. *Mortensen* did not conclude that a calculation of value is *per se* unacceptable as evidence of value. Thus, in our case, the court did not abuse its discretion by relying on a calculation of value that was supported by expert testimony and based on an acceptable valuation method. *See Mitchell*, 152 Ariz. at 323.

**¶10**　　　Husband contends the record does not support the superior court's finding that Karlberg's opinion lacked foundation. The court found Karlberg's opinion lacked foundation because he did not consider accounts receivable, did not consider expenses and retirement contributions when normalizing the practice income, and attributed all the cash in the practice to Husband's part-time jobs. The experts disagreed whether accounts receivable should be considered and if distributions or retirement contributions should be included when normalizing the practice income. Regarding practice expenses, Karlberg accepted Husband's statement that there were no discretionary expenses or expenses attributed to the part-time jobs, but Sabnekar testified that an income analysis should scrutinize practice expenses. Karlberg attributed the cash in the practice to Husband's part-time jobs because the practice did not generate a positive cash flow. Sabnekar questioned this conclusion. However, even if Karlberg attributed the cash to Husband's part-time jobs, the court was not obligated to accept Karlberg's methodologies when presented with another analysis that the record supported. The superior court is the ultimate factfinder when determining the credibility and weight to give the experts' conflicting testimony, and we will defer to its factual determinations. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

**¶11**　　　Finally, Husband contends the superior court's conclusion that Karlberg's opinion lacked foundation was based on Sabnekar's inadmissible testimony. The court precluded Sabnekar from testifying to the deficiencies in Karlberg's report because those opinions had not been properly disclosed. However, the foundational deficiencies the court cited were brought out during cross-examination of Karlberg. Karlberg admitted he did not analyze practice expenses but accepted Husband's statement that the practice had no non-practice or discretionary expenses. Karlberg also stated on cross-examination that he did not clarify what components (e.g., retirement or distributions) were included in the average "total physician compensation" figure he received from the pertinent database. Thus, even if Sabnekar improperly testified to these facts, other admissible evidence supported the court's findings, and Husband was not prejudiced. *See* Ariz. R. Fam. Law. P. 86 ("Unless justice requires otherwise, an error in admitting or excluding evidence—or any other error by the court or a party—is not grounds for granting relief . . . or for vacating, modifying, or

otherwise disturbing a judgment or order."); *Dep't of Econ. Sec. v. Valentine*, 190 Ariz. 107, 110 (App. 1997) (error must be prejudicial to warrant reversal).

**B.      In Deciding Spousal Maintenance, the Superior Court Erred by Failing to Consider the Income-Earning Potential of the Property Awarded to Wife but Could Properly Consider Husband's Additional Income.**

¶12      The superior court found Wife was entitled to a spousal maintenance award of $2200 per month for five years because she lacked sufficient property to meet her reasonable needs, she was unable to be self-sufficient through her employment, and her age precluded her from becoming self-sufficient through other employment. *See* A.R.S. § 25-319(A)(1), (2), (4). Husband argues the court failed to consider that property awarded to Wife would generate at least some interest income and abused its discretion by considering the income he earns from two part-time jobs in addition to his full-time medical practice. We review the court's award of spousal maintenance for an abuse of discretion. *Cullum v. Cullum*, 215 Ariz. 352, 354, ¶ 9 (App. 2007). Whether to attribute income to a spouse is a question of law we review *de novo*. *Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9 (App. 2009). Again, error must be prejudicial to warrant reversal. Ariz. R. Fam. Law. P. 86.

¶13      In considering a request for spousal maintenance, the superior court first determines if the requesting spouse is eligible under A.R.S. § 25-319(A). If the court finds the spouse is eligible for an award, it then considers the "amount and duration of the award" based on the factors in A.R.S. § 25-319(B). *See Gutierrez*, 193 Ariz. at 348, ¶ 15 (quoting *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984)). Wife bore the burden of establishing that she was entitled to spousal maintenance and the amount warranted under the statute. *See id.* at 350, ¶ 27; *Troutman v. Valley Nat'l Bank of Ariz.*, 170 Ariz. 513, 517 (App. 1992) ("The party who asserts a fact has the burden to establish that fact.").

¶14      The superior court found Wife unable to be self-sufficient through her employment, the marriage was of long duration, and Wife's age prevented her from becoming self-sufficient through her employment. Husband does not dispute that Wife has reached her maximum earning potential and her age precludes further career advancement. Thus, Wife is eligible for an award of spousal maintenance pursuant to A.R.S. § 25-319(A)(2) and (4). *See Gutierrez*, 193 Ariz. at 348, ¶ 17 (a party is eligible

for spousal maintenance if the court finds any one of the A.R.S. § 25-319(A) factors is present).

¶15          Based on her monthly wages, the court concluded Wife needed an additional $2260 a month to meet her reasonable expenses. The court found Wife earns $77,000 annually and will receive approximately $1.7 million in assets. These assets include: (1) her share of the community investment, retirement, and bank accounts; (2) equalization payments for her share of the equity in the Lakeside residence and her interest in Husband's medical practice; (3) cash; (4) the Scottsdale residence (with an equalization payment due to Husband); (5) one-half share of the parties' interest in the "Sunrise" investment; (6) a vehicle; and (7) a timeshare. When calculating Wife's monthly income, however, the court did not consider the interest income potential of these assets because neither party presented a "calculation of the monthly income that could be generated from the investment of the assets Wife will receive."

¶16          Husband argues the superior court was obliged to consider the income-producing potential of these assets according to *Deatherage v. Deatherage*, 140 Ariz. 317, 320 (App. 1984). Wife argues the court did not abuse its discretion by failing to include any interest income because it heard no evidence of such income. Both parties, however, testified that they received $16,000 to $18,000 in annual distributions from the Sunrise investment. Thus, the court did hear evidence of some interest income from the investment accounts awarded to Wife.

¶17          Although Wife did not know if her retirement accounts generated any monthly interest income and, therefore, could not provide specific figures to the court, certainly Wife's (and Husband's) sizeable investment and retirement accounts generate *some* interest income. Wife is of retirement age and may be able to take without penalty any interest earned on her retirement accounts without depleting any principal. Pursuant to *Deatherage*, the court must consider "all property *capable* of providing for the reasonable needs of the spouse seeking maintenance." 140 Ariz. at 320 (emphasis added). The court abused its discretion by failing to attribute *any* interest income to these substantial assets.

¶18          Wife argues that not all of the $1.7 million in assets are income-producing and she need not use up her remaining assets to support herself. In addition to the non-income-producing assets, i.e., the Scottsdale residence, vehicle, and timeshare, Wife was awarded substantial assets with income-producing potential which the court failed to consider. The superior court can attribute a conservative rate of return on the investment

and retirement accounts and the equalization payments without requiring Wife to use any of the principal from these accounts or assets to support herself. *See Deatherage*, 140 Ariz. at 320–21.

**¶19**  Husband also argues the superior court abused its discretion when it considered the income he earns from his two part-time jobs. In addition to his medical practice, Husband works as the medical director for a hospice organization and works shifts as a hospitalist. The court found Husband worked 45–50 hours per week at his medical practice. According to Husband, he works 10–15 hours per month for the medical director position and three to seven 12-hour shifts a month at the hospital. Husband argues the court should not attribute 56–75 hours per week to a 64-year-old spouse in determining whether he can pay Wife spousal maintenance. *See* A.R.S. § 25-319(B)(4).

**¶20**  Husband cites the Child Support Guidelines, A.R.S. § 25-320 app. § 5(A) ("Guidelines"), which provide that the court should not attribute additional income if it would require an extraordinary work regimen. Assuming without deciding that the same analysis applies to spousal maintenance cases, *see Pullen*, 223 Ariz. at 296–97, ¶ 14 (in spousal maintenance case, court held it was appropriate to apply the same factors used to attribute income for purposes of child support), the superior court was within its discretion to include the additional earnings. In applying the Guidelines § 5(A), then Guidelines § 4(A), *McNutt v. McNutt* held this section did not "entitle a parent who continues to work the same schedule as he or she consistently worked during the marriage to a *decreased* support obligation." 203 Ariz. 28, 31–32, ¶ 14 (App. 2002).[2] *McNutt* also rejected the argument that courts were to disregard any hours worked above and beyond a typical 40-hour work week; instead holding courts were to consider the specific facts of the case. *Id.* at ¶¶ 14–15.

**¶21**  Husband has been working as the hospice medical director since 2001 and has been taking hospital shifts since 2010. Husband started working hospital shifts to cover the overhead for his medical practice when his partners left the practice group. In 2016, he reduced the number of hospital shifts and now only works day shifts. According to Husband, he continues to work hospital shifts to support the medical practice. Husband

---

[2]  In *Woodside v. Woodside*, 2 CA-CV 2013-0144, 2014 WL 3732558, at *5, ¶ 25 (Ariz. App. July 29, 2014) (mem. decision), this court expressly declined to apply *McNutt,* 203 Ariz. at 32, ¶ 17, and Guidelines § 5(A) in a spousal maintenance case.

maintains the medical practice because he enjoys it and feels an ethical obligation to his patients and the community to keep the practice open. Husband, like many physicians, works more than a typical 40-hour work week. He has historically worked these hours and chooses to continue to do so for reasons other than and in addition to providing for his family. Therefore, we find no abuse of discretion.

¶22 Because the court failed to consider even a conservative rate of return on potential income producing assets awarded to wife, and we cannot determine if the error was harmless, the case must be remanded for reconsideration.

## ATTORNEY'S FEES AND COSTS ON APPEAL

¶23 Both parties request an award of attorney's fees and costs on appeal pursuant to A.R.S. § 25-324. After considering the parties' financial resources and positions on appeal, we decline to award fees to either party in the exercise of our discretion.

## CONCLUSION

¶24 We affirm the superior court's valuation of Husband's medical practice but vacate the award of spousal maintenance and remand for reconsideration consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA