**BABCOCK v. TAM et ux.**

No. 10835.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1946.

---

[1] Spillers v. United States, 5 Cir., 47 F.2d 893; Stapp v. United States, 5 Cir., 120 F.2d 898.

Stockton & Karam, of Phoenix, Ariz., for appellant.

George D. Locke and J. B. Sumter, both of Phoenix, Ariz., for appellees.

Before GARRECHT, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

On September 23, 1938, Alice E. Babcock, the appellant herein, commenced an action in the District Court of the United States, Southern District of California, against Edwin Tam for damages allegedly received by her in an automobile collision, and on July 26, 1939, a verdict was returned in her favor for $5,701, with interest and costs. Judgment was regularly entered thereon on October 29, 1939. This judgment will hereinafter be referred to as the California judgment.

On February 16, 1942, the said Alice E. Babcock brought an action in the District Court of the United States, for the District of Arizona, against the said Edwin Tam on the above mentioned judgment, and was awarded a judgment thereon on May 26, 1942. This judgment will hereinafter be referred to as the Arizona judgment.

The instant action was brought by the said Alice E. Babcock against the said Edwin Tam and Nita Tam, his wife, by which it is sought to have declared (a) that the Arizona judgment is a community obligation of the Tams, (b) that a recorded conveyance of the lots 7, 8, 9 and 10, block 9, Yuma Heights Subdivision, Yuma County, Arizona from Edwin Tam to Edwin Tam and Nita Tam as their community property be set aside upon the ground of fraud, (c) that the mentioned lots be ordered sold, the proceeds resulting there-

from to be applied upon the Arizona judgment, which would, of course, also satisfy the California judgment in a like degree.

In the instant case the court found that Edwin Tam was engaged in business involving his separate property when the tort basis for the California judgment occurred, and that it was in no manner connected with business or other benefit or advantage of the community, that the transfer or the agreement to transfer the Yuma lots from Edwin Tam's separate estate to the community estate was not made with the intent to defraud, hinder or delay existing or future creditors of Edwin Tam or Nita Tam, his wife, but was made in good faith, that the conveyance was made and received three years before filing of the complaint herein on August 15, 1942. The court concluded that the Arizona judgment based upon the California judgment against Edwin Tam was his separate obligation, that the property in question was community property by reason of a valid transfer from Edwin Tam to the community estate of Edwin Tam and Nita Tam, his wife and not subject to levy for the satisfaction of the judgment against Edwin Tam, and that the action for fraud was barred by the statute of limitations. It was thereby adjudged by the court that "the plaintiff [appellant herein] take nothing by her action against defendants and that her complaint be, and the same is, hereby dismissed," and that the title to the real property in question be quieted in the defendants (the appellees herein) as against any claim of the plaintiff arising out of her claims against Edwin Tam.

Alice E. Babcock appeals from the judgment, claiming error in the findings of fact on the ground that they are not sustained by the evidence.

Our first question is whether the court's finding, that the negligent act of the appellee, Edwin Tam, took place while he was engaged on a mission which was wholly connected with his separate business and not in any way a benefit to the community, is supported by the evidence.

The record discloses the following: In the summer of 1938, Edwin Tam made an automobile trip from his home in Arizona. The evidence is without contradiction that,

at the time, he had information to the effect that persons in Los Angeles, California, might be interested in purchasing certain of his separate real estate. He drove to San Diego, California, where his wife was convalescing after illness, and in a few days drove on to Los Angeles. There he was unable to contact the persons with whom he had intended to confer about his property and for information drove to the home of Mrs. Belle Sparks, an acquaintance in Huntington Park, California, who had possessed real property in Arizona in the vicinity of his ownings. Mrs. Sparks desired to go to Venice, California, and Tam, with her in his automobile started on his return trip, routing himself through Venice and via the coast route to San Diego. Before he reached Venice he suffered an automobile collision in which the appellant (Alice E. Babcock) sustained injuries, from which the related litigation flowed.

It is the contention of appellant that Edwin Tam left Arizona primarily for personal recreation and to visit his convalescent wife in San Diego, and that the evidence does not support the finding that the trip was for business purposes concerning Edwin Tam alone. It is further contended that even though the trip was originally in the interest of Edwin Tam, individually, the drive toward Venice concerning Mrs. Sparks was one of pleasure for Mr. Tam and comes within the cases holding that trips of this nature are for the benefit of the community.

It is undisputed that he set out on the trip from Arizona driving his own automobile, and he testified that he provided for his expenses by his own separate funds. His testimony, to the effect that the motivating factor and purpose of the trip was to see people in Los Angeles in regard to his separate property, was corroborated by the testimony of Mrs. Sparks. She testified as follows:

"Q. Did you have a conversation with Mr. Tam in your home? A. Yes, Mr. Tam came to see me about the Casa Grande property. * * *

"Q. What was the conversation you had with him at that time and place with reference to the property? A. Well, I had

sold my property and he came to make inquiries about whom I sold it to, and who was the agent, and how much I got for it, and most of the details with regard to that."

Ray C. Bennet, an attorney, was a witness and when asked: "Did he [Edwin Tam] state to you why he was going to be away from Yuma a day or two?" he answered, "Yes, he was excited at the prospect of the sale of some Casa Grande property." That the Casa Grande property was the separate property of Edwin Tam is not contested.

 It is correctly claimed by appellant that the Arizona state community law relating to the issues of the instant case is similar in some respects to the Washington state law. Selaster v. Simmons, 1932, 39 Ariz. 432, 7 P.2d 258. See Tway v. Payne, 1940, 55 Ariz. 343, 101 P.2d 435. In the case of McFadden v. Watson, 1938, 51 Ariz. 110, 74 P.2d 1181, 1182, the court announced the governing Washington rule, as stated in Floding v. Denholm, 1905, 40 Wash. 463, 82 P. 738, 739: "The rule now is that community property is liable for a debt created by the husband for the benefit of the community. But such property is not liable for a debt created by a tort of either spouse, or one which is not for the benefit of the community." In Werker v. Knox, 1938, 197 Wash. 453, 85 P.2d 1041, 1043, the court says: "It is in those cases where the husband has caused a negligent injury through the use of an automobile that the tendency of the courts to go to an extreme limit to fix liability upon the community has been most clearly exhibited * * *." This statement, however, is preceded by the sentence, *"But * * * there can be no recovery against the community unless the husband was engaged in doing something which could be said to be beneficial to his principal, the marital community."* In Cosper v. Valley Bank, 1925, 28 Ariz. 373, 237 P. 175, it was held that where a judgment arises out of a transaction wholly regarding separate property and in no way affecting community interests, the person against whom the judgment was made is individually liable out of his separate property rather than the community as community property is liable only for community debts.

 It seems to us that the evidence amply supports the findings that the trip, in its entirety, was an individual enterprise of Edwin Tam's in the interest of his own separate property. So far as the conveyance of Mrs. Sparks is concerned, it would seem that compliance with her request to be taken to Venice was a personal courtesy to one who had assisted him in his dealings with his separate property. Tam was still well within the zone of his separate business at the time of such act, his conduct being far more reasonably suited to the promotion of his separate business than that of the community. Nor had he so deviated or departed from that business as to be outside the scope of such business and into the business of the community. Under the rules of agency, it is said that a master is liable for the acts of his agent while he is acting within the scope of his employment and that a mere incidental detour from his regular business in such employment will not reduce that liability for accidents which may occur during such a detour. See R. J. Reynolds Tobacco Co. v. Newby, 9 Cir., 1944, 145 F.2d 768; Edwards v. Earnest, 1922, 208 Ala. 539, 94 So. 598; Waack v. Maxwell Hardware Co., 1930, 210 Cal. 636, 292 P. 966; Rest. Agency §§ 229(i), 234. By way of analogy we agree that Tam was not acting as agent for the community, but rather that he was acting in the course of his separate business in appreciation for aid already rendered. Any mere detour which he may have made was properly found to be insufficient to take him outside the scope of his separate business.

 It is appellant's theory, however, that even if the trip was an enterprise entirely separate from any community interest and satisfaction of the judgment therefor could be enforced against property owned by Edwin Tam, that the transfer of the Yuma subdivision lots was made for the purpose of hindering, delaying and preventing the lots from being subjected to process in the satisfaction of the judgment and was therefore fraudulent and should be set aside.

The Yuma subdivision lots were formerly owned by Edwin Tam's mother, Julia Tam, who died in 1930, leaving the property to the son. Nita Miller (later Nita Tam) filed a claim against the estate for $850 cash, which she had theretofore advanced toward the maintenance of the auto court situated upon the lots, and for $350 for services rendered. Some six months later Nita Miller and Edwin Tam were married, and the claim was dropped. Thereafter, the parties jointly applied their time and efforts, looking to the successful conduct and improvement of the auto court. A mortgage standing against the property at the date of Julia Tam's death was renewed but thereafter paid off, and the improvements that have been made are of a substantial value.

In 1935 an attorney was employed and preparations were made to show title to the lots with improvements as community property, and a first draft of an agreement and conveyance was prepared. However, the probate proceedings had not been concluded, and distribution had not been made and was not made until February, 1936. Nita Tam fell ill, causing her absence from Yuma much of the time. The final draft of the agreement and conveyance was executed on the 30th of June, 1939, and was recorded July 28, 1939, or after the auto accident, and two days after the jury trial had commenced in the tort action.

Meanwhile, in May, 1939, after the tort action was filed but before trial, a loan of $4000 was negotiated, secured by a note signed by Edwin Tam and Nita Tam, and by a mortgage on the "auto court" property. The borrowed money was to be used for improvements on the property, for medical expenses incurred through Mrs. Tam's illness, and partly in an attempted settlement of the pending tort action.

There is evidence to the effect that the "Community Agreement" was entered into with a view to the advancing years of the parties and to the fact that the auto court had long been considered community property by both Mr. and Mrs. Tam. The consideration recited in the agreement was the waiver of the probate claim, the renewal of the mortgage in 1935 and the May, 1939, mortgage (each of which was signed by both Mr. and Mrs. Tam), and their joint efforts in the operation, maintenance and improvement of the property, the payment of interest on debts and mortgages and the retirement of the principal of said debts.

Under the Arizona statutes,[1] the element of fraudulent intent is disregarded only where there is a failure of consideration, which is not the case here. As has been shown, Nita Tam devoted her time and money to the maintenance of the auto court prior to and since her marriage. The profits of the business were put back into the property by improvements, and $2000 with interest was paid to free the property from a mortgage, existing at the time the lots were distributed to Edwin Tam. Mrs. Tam also carried the burden along with that of her husband of subsequent encumbrances.

Under an Arizona statute, A.C.A.1939, § 58-401, it is stated that a fair consideration is given for property or obligation when "in exchange for such property, or obliga-

[1] A.C.A. 1939, § 58-402. "Conveyances by insolvents and other persons.—1. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
"2. Every conveyance made without fair consideration when the person making it is engaged or about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.
"3. Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.
"4. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed by law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

tion, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

In Ollason v. Glasscock, 1924, 26 Ariz. 193, 224 P. 284, 287, it is said: "It is incumbent upon one who attacks the validity of a conveyance * * * as being in fraud of creditors to prove by clear and satisfactory evidence that the conveyance so assailed is in reality void and fraudulent as to him. He is required to do this by direct proof of the fraud, or by proof of facts and circumstances from which the fraud might reasonably be inferred, and in this he assumes the burden of proof. * * * it is incumbent upon him to first show the fraudulent intent of the vendor * * *. The intent having been shown, the burden then shifts to the purchaser to show a valuable consideration. * * *"

The district court found "That said Community Agreement dated June 30, 1939, had its inception at the time of the marriage of the parties thereto, in October 1930, and was their understanding and agreement at all times subsequent to the date of said marriage, and both parties treated the properties mentioned in said Community Agreement as community property and both contributed their time and efforts in improving said property with funds derived from the use and operation of said property, and that said Community Agreement was made in good faith and not made with any intent to defraud, hinder or delay existing or future creditors of Edwin Tam or Nita Tam, his wife, or to defraud, hinder or delay the plaintiff, Alice E. Babcock." We find no error in this finding.

The district court also found that since the conveyance was recorded more than three years prior to the filing of the complaint in the instant case, the attempt to set it aside is barred by the statute of limitations.[2] Following the automobile accident which resulted in the judgment on October 20, 1939, before the trial, Edwin Tam and his wife, Nita Tam, executed the "Community Agreement", which was recorded July 28, 1939, or more than three years prior to the filing of the complaint herein. By a statute in Arizona such a recordation constitutes notice to all persons of the existence of such a grant or instrument, A.C.A.1939, § 71-426. It is contended by appellant, however, that the statute is not set in motion until the cause of action has accrued, which, it is claimed, would not be until the entry of the judgment on October 20, 1939. The trial court was not in agreement with such a contention nor are we. The plaintiff was charged with knowledge that the laws permit him to commence and prosecute his action, seeking relief upon the ground of fraud, within three years from the discovery of that fraud (July 28, 1939), notwithstanding that judgment had not been entered. Where a creditor has a claim or cause of action for tort or unliquidated demand, he may attack a conveyance in fraud of his rights prior to entry of judgment as he is held to be within the protection of the statutes against fraudulent conveyances. Valley Bank v. Malcolm, 1922, 23 Ariz. 395, 204 P. 207, 214. Thus, it would follow that since the plaintiff failed to take advantage of the opportunity to attack the conveyance at a time when she had the right to do so, and when she was put on notice of the conveyance in the light of the facts relating to it, she is barred from maintaining the action to set it aside.

Affirmed.

---

[2] A.C.A. 1939, § 29-203. "Three-year limitation.—There shall be commenced and prosecuted within three (3) years after the cause of action [has] accrued, and not afterward, the following actions: * * *

"3. For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."