621 P.2d 920

**Rodger J. BACKMAN and Helen R. Backman, husband and wife, Appellants,**

v.

**Detta BACKMAN (Clausen), Appellee.**

**No. 1 CA–CIV 4257.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 14, 1980.

Rehearing Denied Nov. 18, 1980.

Review Denied Dec. 9, 1980.

Neisser & Odegaard by Peter A. Neisser, P.C., Phoenix, for appellants.

Don B. Engler, Yuma, for appellee.

## OPINION

EUBANK, Judge.

The main issue raised by appellants is whether the trial court erred in holding that the statute of limitations, A.R.S. § 12–543(3), did not bar appellee's action to set aside the appellants' conveyance of real property as a fraudulent conveyance, pursuant to A.R.S. §§ 44–1007 and 44–1009.[1]

---

1. § 44–1009.

A. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

1. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

2. Disregard the conveyance and attach or levy execution upon the property conveyed.

The fraudulent conveyance issue was tried to the court without a jury. No request was made by the parties to the court for findings of fact and conclusions of law and none were made. Therefore, all inferences to be drawn from the evidence must be drawn in favor of the judgment. The court did, however, execute and file an "Order For Judgment" which reads in part:

> From the evidence presented, it is conclusive that the transfer of the property, the orange grove, in February, 1968, was in violation of the provisions of A.R.S. 44–1007. Mr. Backman [appellant] testified that, "I had no chance except to get my name off the property—to prevent my being sued for every $200.00 debt." He further testified that Mrs. Helen Backman [appellant-wife] knew that the conference with the attorney was how to avoid law suits. He also stated that he had no reason to transfer the property except for the collectors who were after him. He also testified that the last support check he sent was in February, 1968.
>
> Mrs. Helen Backman testified that she knew that he had to get rid of the property so they couldn't put a lien against it.
>
> In May, 1972, the land was transferred to the defendant Diane C. Coldren, their daughter, by Mrs. Backman without consideration, other than as a gift.
>
> The law appears to be clear that where a transfer is made with intent to hinder, delay or defraud either present or future creditors, the transfer is fraudulent as to both present and future creditors. There is no question in this case that the transfer was made with that intention, both in 1968 to the wife and in 1972 to the daughter.
>
> The statute of limitations has not run.

The "Order For Judgment" permits us to know that A.R.S. § 44–1007 was the basis for the trial court's ruling in favor of the appellee. It does not, however, enlighten us as to the basis for the ruling that "The statute of limitations has not run." A.R.S. § 44–1007 states:

> B. A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

The Uniform Fraudulent Conveyance Act, A.R.S. § 44–1001 *et seq.*, does not contain a specific statute of limitations. The statute of limitations, relating to fraud, is A.R.S. § 12–543(3), which reads:

> There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:
>
> \*    \*    \*    \*    \*    \*
>
> 3. For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

In *Wallin v. Scottsdale Plumbing Co., Inc.*, 27 Ariz.App. 591, 557 P.2d 190 (1976), we intimated that when an action is brought by a creditor, pursuant to A.R.S. § 44–1009(A)(1), to "have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim", that A.R.S. § 12–543(3) was the applicable statute of limitations. *See Babcock v. Tam*, 156 F.2d 116 (9th Cir. 1946). Neither party here questions that it is the proper statute, and we agree. The parties do disagree, however, on when the statute begins to run. This is the main question to be decided on appeal.

By its express terms, A.R.S. § 12–543(3) does not begin to run "until the discovery by the aggrieved party of the facts constituting the fraud." However, all of the requirements of the fraudulent conveyance act must be met before the statute of limitations can be fairly applied to bar an action. One such requirement is that the appellee must be a "creditor." A "creditor" is defined in the act (A.R.S. § 44–1001(3)) as

> retain the property or obligation as security for repayment.

"a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Thus the appellee properly alleged in Paragraph VII of her amended complaint, "That the plaintiff is a judgment creditor and the defendant Rodger J. Backman a judgment debtor by virtue of that certain judgment entered September 16, 1975 in the Circuit Court of the 17th Judicial Circuit in and for the County of Winnebago, State of Illinois in the amount of $4,542.74. A copy of said judgment is attached hereto, marked Exhibit "A" and incorporated herein by this reference." The record shows that appellee proved the factual allegation of Paragraph VII at trial.

Appellants contend, however, that appellee was a creditor, as defined by A.R.S. § 44–1001(3), at least six years prior to the September 16, 1975 judgment alleged in the amended complaint, and that the three-year statute of limitations, A.R.S. § 12–543(3), had run by the time that appellee filed her complaint on August 21, 1975.

Appellants' strongest argument in this respect revolves around an apparent personal judgment that appellee obtained against the appellant Rodger J. Backman in the sum of $2500 for attorney's fees, in Cause No. D–757181, in the Los Angeles County Superior Court of California on June 5, 1970. The judgment was obtained with Rodger's express stipulation and confession of judgment. It acknowledged his paternity of three of appellee's minor children, gave temporary custody of the children to Rodger, and vested exclusive jurisdiction in the California court "to determine paternity, care, custody, support, guardianship, adoption of, or rights of reasonable visitation with, any of the said minor children of the parties . . . ." Thus appellant argues, that at this point in time, and following, appellant Rodger was a debtor of appellee in the sum of $2500 and appellee was a creditor of appellant. Appellants reinforce this argument by pointing to the open-ended nature of the judgment, the determination of his paternity of appellee's three children, and the continuing jurisdiction vested in the California court to resolve future disputes including custody and support.

We have difficulty reaching the same conclusion as appellant. The fact-finder found that the statute had not run. Since we must draw all inference arising from the evidence in favor of the judgment, we must examine the record to find whether a creditor-relationship was proved to exist earlier. Neither the appellee nor the appellant Rodger testified that any monies were due as a result of the June 5th California judgment. Both testified that no claim resulted. Indeed, the one inference that can be drawn from their testimony is that the parties settled the matter when appellant Rodger took custody of their three children and became responsible for their support. Another inference to be made is that Rodger satisfied the judgment claim. Either inference, we believe, defeats appellants' contention.

The June 5th California judgment was modified, however, on September 11, 1973, when the same court in the same action on application of appellee, modified the previous judgment by removing the children from Rodger's custody and placing them in appellee's custody, by awarding appellee child support of $400 each month, and by requiring appellant Rodger to pay appellee $375 attorney's fees. The record shows that these sums were not satisfied resulting, eventually, in the judgment alleged in Paragraph VII of the amended complaint discussed above. Therefore, it is clear from the record that subsequent to September 11, 1973 appellee was a judgment creditor of appellants. The trial court could have found from the evidence that September 11, 1973 was the accrual date of appellee's cause of action against appellants, and since appellee's complaint was filed on August 21, 1975, it was timely filed within the three-year statutory period. Cf. *Molina v. Bennett*, 37 Ariz. 70, 289 P. 512 (1930). *See* Annot., 100 A.L.R.2d 1094 § 7.

Our only concern with the above analysis is the fact that appellee discovered the fraudulent conveyance in March of 1968 when she was preparing to file an earlier

action against the appellants. Her attorney at the time advised her that appellant Rodger had conveyed his interest in the orange grove to his wife Helen. She then filed her action apparently seeking the partition of the 20-acre orange grove. The court granted appellants' summary judgment against appellee on the basis that she failed to timely bring her fraud action for partition within the three-year period required by A.R.S. § 12–543(3), the same statute involved here. Apparently this judgment was not appealed and became final. Appellants attempted to dismiss the present action on the basis of a *res judicata* defense based on the prior judgment; however, they attached only a copy of the summary judgment to their motion to dismiss. The summary judgment, on its face, did not specifically deal with the issues raised by the complaint. No supporting documentation, such as the complaint, answer, discovery, motion for summary judgment and response, were certified as admissible in evidence under Rule 44, Rules of Civil Procedure, 16 A.R.S., or Rules 902 and 1005, Rules of Evidence, 17A A.R.S., and attached to the motion in order for the trial court to determine whether the same issues were raised or could have been raised in that matter. *See Visco v. Universal Refuse*, 11 Ariz.App. 73, 462 P.2d 90 (1970). Not surprisingly the trial court denied the motion. Appellants then answered the amended complaint but failed to raise the doctrine of *res judicata* as an affirmative defense. Rule 8(d), Rules of Civil Procedure, 16 A.R.S., requires that such a defense be affirmatively set forth. The defense was waived by failure to properly raise or prove it. *Hanrahan v. Sims*, 20 Ariz.App. 313, 512 P.2d 617 (1973). However, appellee did testify that she discovered appellant Rodger's conveyance to his wife in March 1968. Does this knowledge destroy appellee's claim here? We hold that it does not.

As suggested above, the Uniform Fraudulent Conveyance Act sets forth other requirements which must be met before the statute of limitations begins to run. A.R.S. § 44–1007, *supra*, applies not only to present creditors but also to *future* creditors. 37 Am.Jur. 813 § 139. Thus, it is the relationship of debtor-creditor and the debtor's actual intent to defraud creditors that makes the act and statute of limitations operable. Here, the trial court specifically found that appellants had the requisite fraudulent intent and the record supports such a finding. Likewise, we believe, barring the 1968 suit and the judgment which was not pled or proved, that following the entry of the September 11, 1973 judgment was the first time that appellee attained the status of a creditor under the act. This conclusion is based primarily on the unusual circumstances surrounding the relationship between appellee and appellants. Appellee is not the ordinary creditor. Her claim was based on delinquent support for the three minor children which did not occur until the September 11th judgment. She could only prove her claim after she obtained the September 11, 1973 judgment, which appellants did not satisfy. *See Sievers v. Sievers*, 11 Wash.2d 446, 119 P.2d 668 (1941); 37 Am. Jur.2d 856 § 196; Annot., 100 A.L.R.2d 1106 § 7. Therefore, even though appellee was knowledgeable of the conveyance in 1968, she first became a creditor of appellants in 1973 and timely filed her action in 1975. *See Hartman v. Hartman, infra.*

Appellants argue that we should reverse on any one of three theories. The first is on the authority of *Babcock v. Tam*, 156 F.2d 116 (9th Cir. 1946). There the court said that the recording of the "community agreement" on July 28, 1939, constituted notice to all persons of the instrument, pursuant to A.C.A. 1939 § 71–426 (now A.R.S. § 33–416), and that since the conveyance was recorded more than three years prior to Babcock filing her complaint to set aside the conveyance of Edwin Tam to himself and Nita Tam, his wife, as their community property, upon the ground of fraud, the statute of limitations A.C.A. 1939 § 29–203 (now A.R.S. § 12–543(3)) would bar the action. *Babcock* is factually distinguishable from the instant case. In *Babcock* the trial court found as a fact, that the transfer was made in good faith and that it was not made with the intent to defraud, hinder, or

delay existing creditors. It also found that the conveyance was made for good consideration. In other words, the court found that the conveyance was not a fraudulent conveyance prohibited by A.R.S. § 44–1001 *et seq.* The *Babcock* court therefore applied the three-year statute of limitations, A.R.S. § 12–543(3), and held that it ran from the time the creditor had constructive notice of the transfer. The trial court here found that the conveyances were fraudulent conveyances. It found that the conveyances were made with the actual intent to hinder, delay, or defraud present and future creditors, and that the conveyances were made without good consideration. As pointed out above, the statute in such a case does not begin to run until the creditor has a provable or accrued claim against the debtor. A.R.S. § 44–1007. *See Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383 (1968); *Hartman v. Hartman,* 135 Tex. 596, 138 S.W.2d 802 (1940). *See analysis Douglas-Guardian Warehouse Corp. v. Jones,* 405 F.2d 427 (10th Cir. 1969).

Appellants' second theory for reversal is based on A.R.S. § 44–1001(3), *supra.* The emphasis is on "unmatured", "unliquidated" or "contingent" claims. Appellants argue that appellee was all of these types of creditors from 1964 onward and thus barred. We disagree for the reasons stated above. Under the facts here, appellee became a creditor of appellants subsequent to the September 11, 1973 judgment.

Appellants' third theory is based on *Valley Bank v. Malcolm,* 23 Ariz. 395, 204 P. 207 (1922). This case was cited in *Babcock* in support of the court's conclusion that the statute of limitations had run. The *Valley Bank* case does not deal with a fraudulent conveyance. It deals with a present creditor situation. Therefore, the same reasons stated in our discussion of appellants' first theory apply here and we reject this argument.

Appellants further contend that the fraudulent conveyance act "does not apply to conveyances by a party to avoid creditors of another person." This question argues the facts. As we have stated above, the record fully supports a finding that the appellee was a creditor of appellants by September 11, 1973, and that the conveyances in 1968 and 1972 were made with appellants' actual intent to hinder, delay or defraud either present and future creditors. Therefore, this contention has no substance. *Ollason v. Glasscock,* 26 Ariz. 193, 224 P. 284 (1924), cited by appellants in support of this argument, requires nothing more.

■ Next, appellants contend there is no evidence to support the finding that the conveyance by appellant Helen of the orange grove to her daughter in 1972 was made to defraud creditors. We disagree. Helen admitted knowing the purpose of the 1968 transfer was to frustrate creditors, she was a party to the 1968 suit filed by appellee, she appeared in the 1970 California suit by personally consenting to the legitimation of Rodger's and appellee's three children, and then she separated from Rodger in 1970. The daughter testified that she paid nothing for the property, that she was aware of the appellee and the children, and "at least vaguely aware there was a lawsuit against" her father when she received the property. The inferences to be drawn from this evidence, as well as other evidence not detailed, substantially supports the trial court's finding.

The last two issues raised by appellants are *res judicata* and estoppel defenses. As discussed above, *res judicata* was not properly raised as an affirmative defense or proved. Therefore, the defense was waived. The same must be said for the defense of estoppel. It was not raised as an affirmative defense in appellants' answer and was not proved. It is therefore waived and cannot be raised on appeal. *Parks v. American Casualty Co. of Reading, Penn.,* 117 Ariz. 339, 572 P.2d 801 (1977).

The judgment is affirmed.

OGG, C. J., Division 1, and FRED J. HYDER, Judge, Retired, concur.

NOTE: The Honorable Fred J. Hyder, a retired judge of a court of record, was authorized to participate by the Chief Jus-

tice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 20.