43 P.3d 203

STATE of Arizona, ex rel. INDUSTRIAL
COMMISSION OF ARIZONA, Plaintiff,
Judgment Creditor–Appellee,

v.

Kevin WRIGHT and Annette Wright, hus-
band and wife, dba Valleywide Under-
ground, Defendants, Judgment Debtors–
Appellants,

Valleywide Underground, Inc.,
Garnishee–Appellant.

No. 1 CA–CV 01–0160.

Court of Appeals of Arizona,
Division 1, Department A.

April 2, 2002.

Janet Napolitano, Attorney General By David J. Dir, Assistant Attorney General, Phoenix, Attorneys for Plaintiff, Judgment Creditor–Appellee.

Sterling R. Threet, Mesa, Attorney for Defendants, Judgment Debtors–Appellants and Garnishee–Appellant.

## OPINION

WEISBERG, Judge.

¶1 Kevin Wright ("Mr.Wright") and Annette Wright ("Mrs.Wright") (together, "appellants") appeal the trial court's ruling that a modification of a premarital agreement, which would have had the effect of protecting Mr. Wright's future earnings from garnishment, was a fraudulent conveyance under Arizona Revised Statutes ("A.R.S.") section 44–1004 (1994). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2 The parties do not dispute the facts of the case. Appellants were married on June 4, 1997. Prior to the marriage, they executed a premarital agreement that provided that "all earnings and income of the other party from his or her personal services after Marriage shall be the Separate Property of that person regardless of the Community Proper-ty Law." On October 3, 1997, an employee of Mr. Wright was injured on the jobsite and sought recovery from the Industrial Commission. On November 20, 1998, the Industrial Commission assessed damages and penalties against Mr. Wright for the worker's injuries and for failure to provide workers' compensation insurance.

¶3 On October 10, 1997, before the Industrial Commission's decision, Mr. Wright incorporated his business, naming Mrs. Wright as President/CEO and himself as Secretary, and issued 100 shares of stock to himself as sole shareholder. Then, on February 3, 2000, after the Industrial Commission's decision, appellants modified their premarital agreement, replacing the previously cited provision with one stating "[a]ny earnings and income resulting from personal services after the marriage will be Community Property under the law." On June 6, 2000, the State filed a Notice of Release of Judgment and Judgment Lien as to Mrs. Wright, and, on June 16, filed a Writ of Garnishment of Mr. Wright's earnings. Appellants filed an objection to the garnishment, arguing that Mr. Wright's wages were community property. After a hearing on the matter in superior court, the commissioner overruled appellants' objection to the garnishment, finding that the modification to the premarital agreement was a fraudulent conveyance under the Uniform Fraudulent Transfer Act (UFTA) (A.R.S. §§ 44–1001 to –1010 (1994)). This appeal ensued.

### DISCUSSION

¶4 This case presents questions involving the interpretation and application of a statute. When the material facts are undisputed, this court determines whether the lower court correctly applied the substantive law to those facts. See Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). We review questions of law and findings that combine fact and law de novo. Id.

¶5 Appellants begin by citing a number of cases supporting the premise that marital agreements are generally binding on creditors. See, e.g., Elia v. Pifer, 194 Ariz. 74, 84, 977 P.2d 796, 806 (App.1998); Schlaefer v.

*Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339, ¶ 10, 996 P.2d 745, 748 (App.2000); *Bender v. Bender*, 123 Ariz. 90, 93, 597 P.2d 993, 996 (App.1979). However, in each of the cases cited, the marital agreement had been entered into *before* the creditor acquired an interest. Appellants fail to cite, and we are unable to find in our case law, precedent in which a post-marital agreement entered into *after* an obligation is incurred has been held to be binding against the creditor.

¶ 6 As a general proposition, we agree that a creditor cannot reach marital community property to satisfy a separate obligation incurred by either spouse after marriage. *See Schilling v. Embree*, 118 Ariz. 236, 239, 575 P.2d 1262, 1265 (App.1977). The earnings of either spouse during marriage are presumed to be community property, absent a clear expression of an intent to the contrary. *See* A.R.S. § 25–211 (2000); *Mitchell v. Mitchell*, 152 Ariz. 317, 321, 732 P.2d 208, 212 (1987); *cf. Schlaefer*, 196 Ariz. at 339, ¶ 10, 996 P.2d at 748 (holding that presumption that debts incurred during marriage are community obligations may only be overcome by clear and convincing evidence). Appellants' initial premarital agreement clearly established their intent to keep post-marital earnings separate property. However, the subsequent modification negated that expression of intent in favor of conventional community property law. Consequently, if we find that the modification of the premarital agreement is valid, Mr. Wright's earnings are community property and are not subject to garnishment. Conversely, if the modification is invalid as a fraudulent conveyance, the original agreement would establish that Mr. Wright's future earnings are his separate property and subject to garnishment. *See* A.R.S. § 44–1007(A)(2); *Heinig v. Hudman*, 177 Ariz. 66, 75, 865 P.2d 110, 119 (App.1993) (holding that an appropriate remedy for an intentionally fraudulent conveyance is to set that conveyance aside).

¶ 7 Appellants put forth two arguments against the application of the UFTA to the modification of their marital agreement. Appellants first argue that there could not have been a fraudulent conveyance because there was no *transfer* of a property interest.

Rather, appellants reason, the modification of the premarital agreement was a change in the *character* of their future earnings. We disagree.

¶ 8 A transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset *or an interest in an asset* ...." (emphasis added). A.R.S. § 44–1001(9). This broad statutory definition clearly includes any transaction in which a property interest was relinquished.

¶ 9 Appellants nevertheless cite *Schlaefer*, 196 Ariz. at 336, 996 P.2d at 745, for the proposition that a marital agreement only has the effect of "transmuting" property, as opposed to transferring a property interest. However, any distinction between a "transmutation" and a "transfer" was not at issue in *Schlaefer*, nor was it discussed. Consequently, we give no weight to *Schlaefer*'s use of these terms.

¶ 10 Before the modification, Mr. Wright held a sole interest in the entirety of his future earnings. The effect of the modification was to transfer that entire interest to the community. Mrs. Wright would have a right to dispose of those earnings now dedicated to the community that she did not have when they were Mr. Wright's separate property. Additionally, upon dissolution of marriage, Mr. Wright would have surrendered all entitlement to half of those earnings. Hence, Mr. Wright has transferred an asset within the meaning of A.R.S. § 44–1001.

¶ 11 Moreover, it would run counter to the broad language of A.R.S. § 44–1001 to hold that, simply because there was a change in character of an asset, it cannot be characterized as a transfer as well. A party can transmute separate property to community property in a variety of ways. In many, if not most of these transactions, the change in character of the assets is effectuated in part by a transfer of those assets. *See, e.g., Martin v. Martin*, 156 Ariz. 440, 752 P.2d 1026 (App.1986) (comingling of funds); *Moser v. Moser*, 117 Ariz. 312, 572 P.2d 446 (App.1977) (transfer of life insurance); *In re Marriage of Barneson*, 69 Cal.App.4th 583, 81 Cal. Rptr.2d 726 (1999) (transfer of stock). To

hold that a "transmutation" cannot also represent a transfer of assets would eviscerate the UFTA by allowing a debtor to shelter assets of any type or value from a creditor simply by "gifting" them to the community. The terms "transmute" and "transfer," therefore, cannot be considered mutually exclusive.

¶ 12 Appellants further argue that, because they are simply returning the character of future earnings to the statutory presumption, the modification cannot be considered a transfer. But they provide no support for this proposition. By entering into the original premarital agreement, Mr. Wright acquired a property interest in his future income that he would not otherwise have had. He cannot relinquish that interest without entering into a subsequent agreement. *See* A.R.S. § 25–204 (2000). An agreement returning a property right previously acquired is no less a transfer than the original agreement through which that right was acquired. Accordingly, we conclude that marital transmutations are subject to the laws governing fraudulent transfers.

¶ 13 Appellants next argue that there was no fraudulent transfer because Mr. Wright's future earnings do not meet the definition of "property" set forth in A.R.S. § 44–1001. "Property" is defined under this section as "anything that may be the subject of ownership." A.R.S. § 44–1001(8). Appellants assert that future, yet unearned earnings are too speculative or ephemeral to be subject to ownership. We disagree.

¶ 14 Arizona adopted the UFTA in 1990 to replace the Uniform Fraudulent Conveyance Act adopted in 1956. Unif. Fraudulent Transfer Act, 7A Uniform Laws Annotated statutory notes (1984). The UFTA has been adopted by at least 40 states. *Id.* The drafters of the UFTA intended the definition of property to include "real and personal property, whether tangible or intangible, and any interest in property, whether legal or equitable." *Id.* at § 1, cmt. 10. An "asset" may include "an unliquidated claim for damages resulting from personal injury, or a contingent claim of a surety...." *Id.* at cmt. 2. Thus, the drafters made it clear that both speculative and intangible property rights and interests are subject to transfer, and the courts have consistently defined property accordingly. *See, e.g., In re Mathews,* 207 B.R. 631 (Bkrtcy.D.Minn.1997) (release of possible bad faith claims cognizable as transfer under UFTA); *Airflow Houston, Inc. v. Theriot,* 849 S.W.2d 928 (Tex.Ct.App.1993) (fraudulent transfer of corporate good will).

¶ 15 Appellants cite two cases in support of their argument that future rights cannot be transferred under the UFTA. In *Mitchell v. Mitchell,* 152 Ariz. 312, 732 P.2d 203 (App. 1985), *vacated in part by* 152 Ariz. 317, 732 P.2d 208 (1987), the court addressed the use of future earning capacity in a marriage dissolution to value one spouse's goodwill in a partnership interest. The court found that "future earnings and/or earning capacity is not an asset to be valued and divided as community property...." *Id.* at 316, 732 P.2d at 207. However, the court did *not* find that future earnings were not definable as an asset; rather the court's holding was simply that distribution of future earnings upon dissolution of marriage was inappropriate because to do so would amount to characterizing post-marital earnings as community property. *Id.* Moreover, the supreme court vacated the appellate court's findings that goodwill is not a community asset and affirmed the trial court's method of valuation. *Id.* at 321, 323, 732 P.2d at 212, 214. Therefore, *Mitchell* is of questionable authority and inapplicable to the issue here.

¶ 16 Appellants also cite *Trew v. Trew,* 5 Neb.App. 255, 558 N.W.2d 314 (1996), *rev'd on other grounds by* 252 Neb. 555, 567 N.W.2d 284 (1997). In *Trew,* the debtor, who was a devisee under his brother's will, renounced his interests in the estate to prevent garnishment of those interests. The court found that, because a beneficiary acquires no possessory interest in an estate until the death of the testator, there can be no transfer within the meaning of the UFTA. *Id.* at 318.

¶ 17 It is generally true that courts will not enforce a contract based on inchoate rights at law. *See, e.g.,* Restatement (Second) of Contracts § 321(2) (1981) ("[a] pur-

ported assignment of a right expected to arise under a contract not in existence operates only as a promise to assign the right when it arises and as a power to enforce it"); Restatement (Second) of Trusts, § 86 (1959) ("an expectation or hope of receiving property in the future cannot be held in trust"); Restatement of the Law of Property § 316 cmt. c (1936) (a contract to release or assign an expectancy interest is only enforceable in equity); *see also State Farm Mut. Ins. Co. v. St. Joseph's Hosp.*, 107 Ariz. 498, 501, 489 P.2d 837, 840 (1971) (" 'it is difficult to conceive of an equitable lien on a mere expectancy, or inchoate right, not a debt, and not assignable.' ") (internal citation omitted). But here, Mr. Wright mischaracterizes his future income as an inchoate right. While the *amount* of his future income is speculative, his possessory *rights* to any such income are immediate and absolute. Vested future interests are assignable at law. *See, e.g., Smith v. Payne*, 156 Ariz. 506, 511, 753 P.2d 1162, 1167 (1988); *Bustrum v. Gardner*, 154 Ariz. 409, 410, 743 P.2d 5, 6 (App.1987).

¶ 18 The court in *State Board of Equalization v. Woo*, 82 Cal.App.4th 481, 98 Cal. Rptr.2d 206 (2000), faced with the same argument, came to the same conclusion as we do here. The court concluded that

> [appellant's spouse] had a present interest in appellant's future earnings at the time he executed the marital agreement. It is well settled that · earnings of either the husband or the wife acquired during marriage constitute community property. And, a spouse's respective interests 'in community property during continuance of the marriage relation are present, existing, and equal interests.' [Husband's] interest in appellant[']s earnings was thus not dependent on whether she was employed at the time she executed the agreement.

*Id.* at 208 (internal citation omitted). We similarly conclude that Mr. Wright's future earnings, although speculative, are nevertheless assets and property within the meaning of A.R.S. § 44–1001.

¶ 19 Appellants' remaining arguments are equally unpersuasive. Appellants point out that the garnishment statutes distinguish between "monies" and "earnings" and, on the

basis of that distinction, suggest that we must also distinguish "earnings" from "future earnings" to their benefit. However, the mere fact that the legislature has decided to limit the amount that can be garnished from earnings, as opposed to money already in hand, does not compel us to find that future earnings are somehow exempt from garnishment. Quite the contrary, such an interpretation would suggest that new garnishment proceedings would have to be entered each time an employee earns but has not received payment for his efforts. We reject such an interpretation.

¶ 20 Appellants further suggest that their statutory right to modify their premarital agreement somehow prevents it from being fraudulent and that, even assuming the modification is considered a transfer, it is not fraudulent if given for reasonably equivalent value. The fact that the agreement is authorized by statute and, absent fraud, would otherwise be legal, does not take the transaction out of the realm of the UFTA. Many fraudulent conveyances, whether explicitly authorized by statute or not, might be legal under conventional circumstances. It is not the transaction itself, but rather the purpose behind the transaction, that brings a transfer under the scrutiny of A.R.S. § 44–1004.

¶ 21 Moreover, appellants misstate the law in asserting that a transaction can only be fraudulent if not given for reasonable value, citing A.R.S. § 44–1004(A)(2). It is clear from the record that the court below applied § 44–1004(A)(1), which states that a transfer is fraudulent if made "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor."

¶ 22 We thus come to appellants' arguments that public policy somehow favors transactions of this nature. Appellants primarily cite bankruptcy cases for the proposition that exemptions from debt collection should be construed liberally in favor of the debtor. But the public policy purposes behind the bankruptcy codes differ markedly from those concerning marital property, garnishment or fraudulent transfers. The purpose behind the presumption that all marital earnings are community property is primari-

260

ly to define and protect the property rights of each spouse upon dissolution of marriage or upon death; the presumption is not intended to be a mechanism to insulate one spouse from an obligation incurred, whether before or after marriage, to a third party.

¶ 23 Similarly, the application of bankruptcy exemptions to the property subject to the UFTA has been specifically rejected. *See* A.R.S. § 44–1001(1)(b) (assets do not include "[p]roperty to the extent it is generally exempt under nonbankruptcy law"). Hence, we find no public policy favoring the use of community property laws to circumvent the legitimate collection of a debt by a creditor.

¶ 24 Having found that appellants' modification to the premarital agreements did represent a transfer within the meaning of A.R.S. § 44–1001, we affirm the lower court's finding that it was fraudulent. Section 44–1004(A)(1) defines a fraudulent transfer as one made with "actual intent to hinder, delay, or defraud any creditor of the debtor." As the lower court pointed out, "[a]ctual intent may be shown by direct proof or by circumstantial evidence from which actual intent may be reasonably inferred." *Gerow v. Covill*, 192 Ariz. 9, 17, 960 P.2d 55, 63 (App. 1998). The court below applied the "badges of fraud" enumerated in A.R.S. § 44–1004(B) in finding a fraudulent purpose. Specifically, the court noted that (1) the transfer was to an insider (i.e., the marital community), (2) Mr. Wright retained substantial control over the property, (3) before the transfer was made, Mr. Wright had been sued and a judgment had been entered against him, and (4) the transfer came shortly before the State appellee instituted collection procedures on the judgment. Under the circumstances, we agree that the transfer was prompted by an actual intent to hinder, delay or defraud a creditor, and therefore violated A.R.S. § 44–1004.

## CONCLUSION

¶ 25 For the reasons stated, we affirm the trial court's Order of Continuing Lien. Because we do not find that this appeal was brought for the sole purpose to harass or delay, we deny both parties' requests for attorney's fees.

CONCURRING: JAMES B. SULT, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.