IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| ELYSE KAUFMANN, a single woman, | ) | 2 CA-CV 2005-0037 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| M & S UNLIMITED, L.L.C., an Arizona | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20036104

Honorable Carmine Cornelio, Judge

REVERSED AND REMANDED

Law Office of Mark Rubin, P.L.C.
  By Mark Rubin                                                                     Tucson
                                                              Attorney for Plaintiff/Appellant

Brenda J. Lee & Associates
  By Brenda J. Lee                                                                  Tucson
                                                            Attorneys for Defendant/Appellee

E S P I N O S A, Judge.

¶1        Appellant Elyse Kaufmann appeals from the trial court's grant of summary

judgment in favor of appellee M & S Unlimited, L.L.C. on its cross-motion for summary

judgment and the denial of Kaufmann's motion for summary judgment in her cause of action

for fraudulent transfer of real property. Kaufmann contends the trial court erred by determining that *Blalak v. Mid Valley Transportation, Inc.*, 175 Ariz. 538, 858 P.2d 683 (App. 1993), was controlling authority and trumped the Arizona Fraudulent Transfer Act. We agree and therefore reverse.

## Factual Background

¶2      In reviewing a grant of summary judgment, we view the facts in the light most favorable to the party opposing summary judgment. *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 943 P.2d 855 (App. 1997). Between March and July of 2003, Kaufmann lent or advanced a total of $195,000 to James Hessler and GWH Unlimited, L.L.C. Kaufmann received two partially executed promissory notes, one in the amount of $25,000 signed by James Hessler and one in the amount of $100,000 signed by Gerald Hessler on his own behalf and purportedly under a power of attorney for Moshe Gedalia, the sole member of M & S Unlimited. Kaufmann also received two partially executed deeds of trust covering two residential lots in Pima County.[1] At that time, GWH held legal title to three other lots located in Pima County, and those lots are the subject of Kaufmann's fraudulent transfer claim.

¶3      In August 2003, Kaufmann demanded original promissory notes, recordable deeds of trust, and a construction contract as the security agreed upon when she had advanced the funds. On October 14, 2003, Kaufmann and Gedalia met to discuss the loan

---

[1]Although it is not clear in the record, the parties agreed at oral argument that neither of these residential lots was conveyed in the transfer at issue here.

transaction situation. The next day, Gerald Hessler signed deeds transferring the three lots from GWH to M & S. The deeds were recorded on October 17. At the time it transferred the lots, GWH apparently received nothing for them. Moreover, at that time, GWH had no income and no assets other than the three lots in its name.

¶4        Kaufmann brought this action against M & S in June 2004, seeking to recover her funds under Arizona's Uniform Fraudulent Transfer Act, A.R.S. §§ 44-1001 through 44-1010, (the Act), alleging she was entitled to relief under § 44-1007.[2] Both Kaufmann and M & S filed motions for summary judgment. M & S, the transferee of the three lots that had been GWH's only assets, asserted that M & S had provided "all of the monies to purchase the lots."[3] It conceded that GWH had held legal title to the property until the transfer, but argued that, under *Blalak*, Kaufmann could not recover because M & S had always been the equitable owner of the property and the transfer of legal title did not fall under the Act. The trial court "reluctantly" granted summary judgment in favor of M & S and denied Kaufmann's motion, citing *Blalak* and stating: "The Court feels its hands are tied." This appeal followed the trial court's entry of judgment in favor of M & S pursuant to Rules 54(b) and 56, Ariz. R. Civ. P., 16 A.R.S., Pt. 2.

---

[2]Kaufmann previously had sued the Hesslers and GWH in November 2003. GWH and Gerald Hessler stipulated to entry of judgment against them in February 2004 in the amount of $170,000 plus interest.

[3]Although M & S asserts in its brief that GWH "[a]t no time . . . ma[d]e any payments toward purchase of the lots," the record contains copies of multiple checks written by GWH or the Hesslers to LandAmerica Account Servicing and Lawyers Title with corresponding copies of payment coupons for the lots at issue. The record also contains copies of checks to GWH from M & S, apparently written as reimbursement for those payments.

3

**Discussion**

¶5        We review a grant of summary judgment *de novo* and will reverse if the trial court's granting of M & S's cross-motion was erroneous. *See Hall.* The denial of a motion for summary judgment is generally not appealable, but once we have jurisdiction over an order granting summary judgment, we may consider the merits of an order denying summary judgment and direct entry of summary judgment if there are no issues of material fact and the movant is entitled to judgment as a matter of law. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App. 1998).

¶6        We initially note that this is a fraudulent transfer action under the Act, not an action under Arizona's conveyance statutes, A.R.S. §§ 33-401 through 33-513. In *Blalak*, after a third party had purchased real property with Blalak's funds, a judgment creditor of the third party placed a lien on the property. Blalak sought to quiet title to the property in himself and to have the lien declared invalid on the ground that he had always been the equitable owner of the property notwithstanding § 33-412(A), which provides that unrecorded conveyances of property are void as to creditors,[4] and § 33-404, which requires

_____

[4]Section 33-412, A.R.S., specifically provides:

> A. All bargains, sales and other conveyances whatever of lands, tenements and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years, and deeds of settlement upon marriage, whether of land, money or other personal property, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law.

the disclosure of beneficiaries of property held in trust.[5] Division One of this court granted Blalak the relief he sought, holding that "A.R.S. § 33-412(A) does not, standing alone, affect the validity of unrecorded equitable liens as against creditors . . . without notice of the liens." 175 Ariz. at 541, 858 P.2d at 686. The *Blalak* court further found that the only relief provided by § 33-404 is avoidance of the transaction by the grantor. We do not find *Blalak* controlling here for two reasons.

¶7  First, we reject M & S's argument that GWH never owned the lots and therefore could not have transferred any interest in them because it had nothing to convey in view of *Blalak*'s interpretation of § 33-404(F). To the extent *Blalak* suggests that legal title is not an interest in property, we disagree. *See Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 132, 650 P.2d 432, 434 (1982) (owner of equitable title "not the legal owner of the property because its interest was not of record" but the "hold[er of] all other rights"); *Boone*

---

B. Unrecorded instruments, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding.

[5]Section 33-404, A.R.S., generally provides that all deeds or conveyances shall identify any beneficiaries for whom the grantee holds title, and that a failure to so identify shall render the conveyance voidable by the other party within two years of recording. Subsection F of the statute states:

If real property or any interest in real property, or any mortgage, deed of trust or other lien on real property, is acquired for value, the title, interest, mortgage, deed of trust or other lien is not impaired or in any way adversely affected by reason of the failure of any person to comply with the requirements of this section.

*v. Grier*, 142 Ariz. 178, 182, 688 P.2d 1070, 1074 (App. 1984) ("There is a rebuttable presumption that record title accurately reflects the ownership interest in real property."); *see also Wayt v. Wayt*, 123 Ariz. 444, 446, 600 P.2d 748, 750 (1979) ("A contract for the sale of realty does not effect a transfer of legal title. The vendor remains the owner of the legal estate, while the vendee holds an equitable interest in the property."); *Smith v. Tang*, 100 Ariz. 196, 204, 412 P.2d 697, 703 (1966) ("The mutual interest the joint tenants retain after a contract to sell is legal title . . . . Prior to entering the agreement to sell . . . , the joint tenants own[] legal and equitable title to the land."); *Hoyle v. Dickinson*, 155 Ariz. 277, 280, 746 P.2d 18, 21 (App. 1987) (pursuant to a land contract, legal title remains in vendor until payment in full is made, but plaintiffs had "transferred legal title to the trustee and did not retain any interest in the property").

¶8        Second, *Blalak* involved only the conveyance and deed statutes in Title 33 and did not address the law of fraudulent transfers. We reject M & S's assertion that the legislature intended the expansive reach of the Act to be circumscribed by an arguably anomalous interpretation of Title 33. *See Blalak* (Garbarino, J., dissenting).[6] Moreover, adopting the *Blalak* majority's reasoning in this fraudulent transfer action would preclude Kaufmann from obtaining relief otherwise available under the Act.

_____

[6]Although the *Blalak* court's conclusions may be questionable, *see Blalak v. Mid Valley Transportation, Inc.*, 175 Ariz. 538, 858 P.2d 683 (App. 1993) (Garbarino, J., dissenting), we need not, despite the parties' repeated urging, address the soundness of *Blalak*'s reasoning or result in view of our determination that the statutes in Title 33, most notably § 33-404, are not controlling here.

¶9         Section 44-1005 provides that a transfer is "fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer." "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." § 44-1001(2). The same remedies are available to creditors whether the claim has been reduced to a judgment or not. § 44-1007; *Moore v. Browning*, 203 Ariz. 102, 50 P.3d 852 (App. 2002). Kaufmann's right to payment arose at the earliest when she received partially executed notes and security interests in two lots in exchange for her funds, and at the latest when she was notified that the loans would not be repaid as agreed.[7] In any event, Kaufmann had a claim for purposes of the Act before this transfer occurred.

¶10         M & S argues that the transfer at issue is not covered by the Act because it merely consolidated the legal title of the property and its equitable ownership. We disagree because it is clear the transfer of legal title to real property is a "transfer" within the Act's broad provisions. "It is not the transaction itself, but rather[,] the purpose behind the transaction, that brings a transfer under the scrutiny of A.R.S. § 44-1004." *State ex rel. Indus. Comm'n v. Wright*, 202 Ariz. 255, ¶ 20, 43 P.3d 203, 207 (App. 2002); *see also Backman v. Backman*, 127 Ariz. 414, 418, 621 P.2d 920, 924 (App. 1980) ("[I]t is the

_____

[7]Kaufmann alleged in her complaint that GWH had made this representation to her, and M & S has not disputed it.

7

relationship of debtor-creditor and the debtor's . . . intent to defraud creditors that makes the act . . . operable.").

¶11 Under the Act, a transfer is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or *an interest in an asset* and includes payment of money, *release*, lease and creation of a lien or other encumbrance." § 44-1001(9) (emphases added). "This broad statutory definition clearly includes any transaction in which a property interest was relinquished." *Wright*, 202 Ariz. 255, ¶ 8, 43 P.3d at 205. An asset is the property of a debtor to the extent it is not encumbered by a valid lien. § 44-1001(1)(a). For purposes of the Act, "[l]ien" is defined as "a charge against or an interest in property to secure payment of a debt or performance of an obligation and includes a security interest created by agreement, a judicial lien . . . , a common law lien or a statutory lien." § 44-1001(6). And the Act specifically provides that a transfer to an "insider" is a factor to be considered in determining fraudulent intent. § 44-1004(B)(1).

¶12 In *Premier Financial Services v. Citibank*, 185 Ariz. 80, 912 P.2d 1309 (App. 1995), Division One of this court found that a transfer of funds from the owners of a certificate of deposit to their daughter was fraudulent despite the daughter's testimony that she previously had given the funds to her parents and they were merely returning the money. The court concluded that the timing of that transfer during litigation against the parents and other circumstances surrounding the transfer indicated the parties' intent was to defraud creditors. In a similar vein, the court noted in *Wright* that "[a]n agreement returning a

8

property right previously acquired is no less a transfer than the original agreement through which that right was acquired." 202 Ariz. 255, ¶ 12, 43 P.3d at 206. Thus, the modification of a marital agreement to convert the husband's earnings from separate property into community property was held to be a transfer within the Act because the change had been made to protect those earnings from potential garnishment. Similarly, in *Gerow v. Covill*, 192 Ariz. 9, 960 P.2d 55 (App. 1998), the transfer of goodwill accrued in a husband's separate business to a business owned by his sister-in-law was held to be a fraudulent conveyance because the intent was to prevent the wife from claiming her share of the community asset. *See also Hullett v. Cousin*, 204 Ariz. 292, ¶ 31, 63 P.3d 1029, 1036 (2003) ("[A] distribution of assets previously advanced by . . . limited partners, for example capital contributions, may be a return of value . . . , but it is not a transfer for value.").

¶13        We note that, in an action pursuant to § 44-1005, proof of intent does not appear to be required; instead, the plaintiff must merely prove the circumstances listed in the statute. *Id*. ¶ 13 ("No proof of intent is required to maintain a fraudulent transfer action under A.R.S. section 44-1005."). Under § 44-1006(1)(a), real property is transferred when "a good faith purchaser of the asset from the debtor . . . cannot acquire an interest in the asset that is superior to the interest of the transferee." In this case, that occurred on October 17, when the transfer deeds between GWH and M & S were recorded. *See* § 33-412. However, under § 44-1003(C), that transfer was not "made for present value" because the exchange between GWH and M & S was not "intended by them to be contemporaneous and [was not] in fact substantially contemporaneous."

9

¶14 The record reflects that legal title to the lots at issue was transferred to M & S following Kaufmann's meeting with Gedalia about her loans.[8] Gerald Hessler, the principal of GWH, admitted in his deposition that the company had no other assets at the time of the transfer, which resulted in GWH becoming insolvent. *See* § 44-1002. Gerald Hessler also admitted he had received no value from M & S in exchange for the transfer. Accordingly, this transaction appears to include all of the elements of a fraudulent transfer under § 44-1005. Although M & S argues that GWH transferred the property only to consolidate legal and equitable ownership, our supreme court has stated that "[no] . . . good faith defense [is] available to a debtor in a fraudulent transfer action brought under [§ 44-1005]." *Hullett*, 204 Ariz. 292, ¶ 13, 63 P.3d at 1032.[9]

---

[8]It is unclear from the record whether Gedalia may also be a debtor of Kaufmann. The record contains a promissory note and deed of trust Gerald Hessler signed under a purported power of attorney for Gedalia. In any event, we need not address that issue. Nor do we address Kaufmann's argument that the "clean hands doctrine" applies to defeat M & S's claim of equitable ownership.

[9]In her briefs, Kaufmann asked us to both reverse the grant of summary judgment in favor of M & S and remand to the trial court with instructions to enter summary judgment in her favor. But at oral argument, both parties acknowledged there exist issues of fact, precluding summary judgment. Therefore, we do not address the ultimate merit of the fraudulent transfer claim. *See Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App. 1998).

**Disposition**

¶15      For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of M & S and remand the case for further proceedings.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
JAMES A. SOTO, Judge*

*A judge of the Santa Cruz County Superior Court authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed July 8, 2005.